BAKER, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 7 — November 17, 1891.*

CRIMINAL LAW AND PRACTICE. (*1*) *Plea in abatement: Issue: Trial.*
(*2, 3, 5*) *Ashland municipal court: Constitutional law: Change of venue: "Adjoining circuit."* (*4*) *Indictment or information.* (*6, 7*) *Evidence: Declarations of conspirators.* (*8, 9*) *Instructions to jury: Shifting of burden of proof: Strength of presumptions.* (*10, 11*) *Evidence: Declaration by accused in his own interest: Custom of bank.*

1. To an information for larceny the defendant pleaded in abatement, among other things, that he had not had or waived a legal preliminary examination. The plea was summarily overruled. *Held,* that this was irregular. An issue upon the plea should have been formed and tried. If, however, the plea was bad upon its face, the defendant was not prejudiced.

2. Even if so much of the act creating the municipal court of Ashland county (ch. 94, Laws of 1889) as attempts to confer on the clerk power to examine persons applying for warrants, and to issue warrants, is unconstitutional, as an attempt to confer judicial power upon an officer not authorized by sec. 2, art. VII, Const., this does not invalidate the balance of the act.

3. The municipal court of Ashland county was in existence from and after the publication of ch. 94, Laws of 1889, and the person appointed to fill the office of judge until the first Monday in January, 1890, was, during that time, at least the judge *de facto. In re Burke,* 76 Wis. 357, followed.

4. Sec. 5, ch. 140, Laws of 1889 (amending sec. 2545, R. S., and providing for the summoning of grand jurors to attend each term of the circuit court unless the judge shall make an order to the contrary), does not affect the provisions of law authorizing prosecutions by information.

5. Whether ch. 166, Laws of 1889 (providing that when the place of trial is changed because of the prejudice of the judge, the cause shall be sent for trial into an adjoining circuit), is applicable to the municipal court of Ashland county, not determined. If applicable, the fifteenth circuit, including Ashland county and other counties entirely surrounding it, is an adjoining circuit; and a cause may be sent from said municipal court to the circuit court for Ashland county.

Baker vs. The State.

6. To render the acts and declarations of one conspirator admissible in evidence against another, there must be proof sufficient to establish *prima facie* the existence of the conspiracy at the time of such acts and declarations.

7. A conspiracy to commit larceny does not necessarily end when the crime has been committed, as the stolen property may have to be divided, or some other acts done, as a part of the conspiracy.

8. In an action for larceny, a charge that "after the state had introduced its evidence, it became necessary for the defendant to overthrow the presumption which such evidence has created, and the burden of proof rested upon the defendants to account for the money which was proven to have been in their possession," was erroneous.

9. It was error, also, to charge that the possession by defendant of a part of the stolen bills, if proven, would make "a strong presumption" against him. It is the province of the jury to determine the strength of a presumption so raised.

10. Evidence of a remark made by defendant before the larceny, on exhibiting a roll of bills, was not admissible in his behalf, being a declaration in his own interest.

11. Evidence that it was the custom of a bank from which the stolen money had recently come, to send out old money rather than new when called upon to ship any considerable amount, and to retain silver certificates as long as possible, was admissible, in connection with other testimony, to raise a probability that new silver certificates found in defendant's possession were a part of the money stolen.

ERROR to the Circuit Court for *Ashland* County.

Information for larceny. The facts are stated in the opinion.

*Rublee A. Cole* and *G. W. Cate*, for the plaintiff in error.

The *Attorney General* and *J. M. Clancey*, Assistant Attorney General, for the defendant in error.

WINSLOW, J. The plaintiff in error was convicted, June 25, 1890, in the circuit court of Ashland county, of larceny of about $39,000 from the vault of the Iron Exchange Bank of Hurley, Wis., September 20, 1889. The preliminary examination was held before the municipal court of Ashland county, and the information (which was jointly against

plaintiff in error and one Phelps Perrin) was filed in said municipal court. Afterwards, upon affidavit of prejudice filed by plaintiff in error, the place of his trial was changed to the circuit court of Ashland county, and he then had a separate trial.

Some preliminary questions are raised as to the ruling of the judge of the municipal court upon a plea in abatement filed by plaintiff in error before the change of venue took place. The material parts of this plea were substantially: (1) That ch. 94, Laws of 1889, being the act creating the said municipal court, is unconstitutional, because it attempts to confer on the clerk of such court the power to hold criminal examinations, and that consequently the plaintiff in error had not had a legal preliminary examination, and had not waived the same; (2) that no order had been filed by the municipal judge, prior to the then current term, directing that no grand jurors be summoned for said term, and therefore a grand jury should have been summoned, but none in fact had been summoned, and no indictment preferred against plaintiff in error, and that he could not be legally tried upon an information; (3) that there was no such court as the municipal court of Ashland county, and no such officer as the judge of said court, either *de jure* or *de facto*, prior to the first Monday in January, 1890.

It appears that this plea was summarily overruled by the municipal court without any issue being taken thereon. This method of disposing of the plea in abatement was undoubtedly irregular. The district attorney should have taken issue thereon either by reply or demurrer, and such issue should have been tried. This was decided in *Martin v. State*, 79 Wis. 165. We trust we shall not be again required to call attention to this rule of criminal procedure. But, although the plea was not regularly disposed of, still, if it was upon its face bad, the defendant cannot be said to be prejudiced. That it was bad is clear. Even if it be as-

sumed that so much of the act creating the municipal court of Ashland county as attempts to confer on the clerk of the court power to examine persons applying for warrants, and to issue warrants, is unconstitutional, as an attempt to confer judicial power upon an officer not authorized by sec. 2, art. VII, of the constitution, this, upon familiar principles, would not invalidate the balance of the act. *Lynch v. "Economy,"* 27 Wis. 69.

It clearly appears, inferentially from the plea itself, and directly from the statements of the bill of exceptions, that the statement that plaintiff in error had received no preliminary examination was, in effect, a legal conclusion based upon the supposed fact that no such court as the municipal court, or judge as the municipal judge, was in existence before January, 1890, and consequently that the pretended examination admittedly held before said municipal judge prior to January, 1890, was in fact no examination. This objection has been thoroughly disposed of by this court in the cases of *In re Burke,* 76 Wis. 357, and *In re Manning,* 76 Wis. 365. As to the objection that the plaintiff in error could not be prosecuted at the term in question under an information, but must be indicted by a grand jury, it is sufficient to say that the law upon which counsel rely, viz., ch. 140, Laws of 1889, does not purport to affect the provisions of law authorizing prosecutions by information in any respect. We conclude that the plea in abatement was bad in law, and that plaintiff in error was not prejudiced by the summary disposition of it.

It is, in the next place, objected that the circuit court of Ashland county had no jurisdiction of the cause, because it was not in an "adjoining circuit." This is based upon the ground that ch. 166, Laws of 1889, is applicable to the municipal court of Ashland county, and controls and amends the organic act creating that court, because it was passed afterwards. We shall not decide whether this contention

be correct or not. If it be correct, we hold that the fifteenth circuit, of which Ashland county was a part, was an adjoining circuit. The counties then composing the fifteenth circuit outside of Ashland county, were Bayfield, Oneida, Price, Sawyer, and Taylor. A glance at the map shows that these counties entirely surrounded Ashland county, and thus, if the fifteenth circuit was not an adjoining circuit, there was no such circuit.

We come now to the objections and exceptions taken upon the trial. The state claimed that there was a combination or conspiracy between *Baker* and Phelps Perrin to commit this larceny, and offered much testimony as to the acts and declarations of Perrin in the absence of *Baker*. The principle is well established that evidence of the acts and declarations of co-conspirators, if made pending the conspiracy, and in furtherance of, or with reference to, the common design, are admissible against all, and it is not necessary that the defendant against whom the act or declaration is sought to be introduced should have been a conspirator at the time the act or declaration took place. If he subsequently joined the conspiracy, he ratified the previous acts of the conspirators, and made such prior acts and declarations in reference to the common object evidence against him. *Holtz v. State*, 76 Wis. 99.

But it is indispensable that there be proof sufficient to establish *prima facie* the fact that a conspiracy existed at the time of the act or declaration sought to be introduced.

In the present case the state was allowed to prove, against objections, conversations of Perrin, in the absence of *Baker*, with the witnesses Goodland and Seymour, which took place in November, 1888, and the winter of 1888 and 1889. These conversations were substantially proposals or suggestions by Perrin that such a larceny as in fact took place in September, 1889, might be committed. We have looked in vain through the record for any evidence tending

to show that any conspiracy was then formed or in existence. Certainly none was formed with the witnesses, for they did not accept or act upon Perrin's proposals. *Baker* did not come to Hurley to reside until some time in the summer of 1889, and, although it appears that Perrin and *Baker* were intimately acquainted for ten or twelve years before the larceny, we are satisfied that the evidence is entirely insufficient to show even a *prima facie* case of conspiracy between Perrin and *Baker* prior to August, 1889, when *Baker* came to Hurley to reside. Indeed, the circuit judge seems to have been of this opinion, for he distinctly ruled as to the conversation with Seymour as follows: "Declarations of co-conspirators, made before the conspiracy occurred, are admissible when either of the conspirators is on trial." The admission of this evidence was error for which the judgment must be reversed, as the evidence so allowed was manifestly likely to be very prejudicial to the plaintiff in error.

Exception was taken to certain parts of the charge of the court to the jury. One part of the charge excepted to was as follows: "After the state had introduced its evidence, it became necessary for the defendant to overthrow the presumption which such evidence has created, and the burden of proof rested upon the defendants to account for the money which was proven to have been in their possession." This certainly comes perilously near being an instruction that the burden of proof shifted during the trial to the defendant, and we think a jury would so understand it. Within the rule laid down in *Crilley v. State*, 20 Wis. 231, we hold this to be error.

That part of the charge also which instructs the jury that the possession by *Baker* of a part of the stolen bills, if proven, would make a "strong presumption" against him, is certainly objectionable. It is the jury's province to determine the strength of a presumption so raised. In this

connection we cannot forbear remarking that that portion of the charge in which the circuit judge attempted to state at length the evidence upon which the state relied to prove guilt was calculated to leave the impression on the minds of the jury that the evidence proved all the alleged facts enumerated. Without deciding that there was error in this part of the charge, we simply suggest that if, upon another trial, a *résumé* of the state's testimony be attempted, its statements be more carefully guarded, so as not to convey to the jury the idea that the court considers the alleged facts proven.

We shall only notice such other points taken as seem to us necessary to be noticed for the guidance of the court upon a new trial. Without expressing any opinion as to the guilt or innocence of the plaintiff in error upon the evidence, we hold that there was a sufficient *prima facie* case made by the state to allow in evidence acts or declarations of Perrin made after *Baker* came to Hurley in the summer of 1889; and, although the general rule is that a conspiracy is at an end when the contemplated crime has been committed, there may unquestionably be circumstances which show that the conspiracy is not then terminated, because all of the objects of the conspiracy are not then fully accomplished. To illustrate, a conspiracy to commit an assault or a murder would, of course, be ended when the assault or murder was committed; but a conspiracy to steal money and divide the proceeds is plainly not at an end until the division takes place, and this view is supported by authority. Whart. Crim. Ev. sec. 699; *Scott v. State*, 30 Ala. 503. Now, there is evidence here tending to show that the arrangements between *Baker* and Perrin with reference to the disposal of the moneys and drafts found on *Baker*, and which the state claimed was a part of the money stolen, had not yet terminated; that there was still something to be done by *Baker* with the drafts found

on him for Perrin's benefit. If this be true (and it was for the jury to say whether true or not), then it is manifest that the objects of the conspiracy were not fully accomplished at the time of *Baker's* arrest. The conspiracy, if there was one, was still pending. Under these views of the law, it is obvious that the evidence as to Perrin's conversation with Lyon, as to when the mining company expected to have its pay-day, was admissible; also the evidence as to conduct and exclamations of Perrin on the night of the larceny, and with reference thereto; also his expenditures of money after the larceny; also his conduct at Paeske's store, on the evening of the larceny.

Upon the trial the state objected to proof of a remark made by *Baker* to one Juneau, a witness for defense, a few days before the larceny, when, according to Juneau's testimony, *Baker* exhibited a roll of money. The objection was properly sustained, because it was clearly a declaration by *Baker* in his own interest.

Exception was also taken by defendant to the admission of the testimony of one Kasten, an employee of the National Exchange Bank of Milwaukee, which tended to show that the practice of that bank was to send out old money rather than new money, when called upon to ship out any considerable amount; also that it was their practice to retain silver certificates as long as possible. It appeared that the money which was stolen had recently come from this bank, and the purpose of this testimony, in connection with other testimony, was to raise a probability that the new silver certificates found in *Baker's* possession were a part of the money stolen. We perceive no error in the admission of the testimony. Its effect may not have been very strong, but it was a fact which we believe competent.

There was considerable testimony received, under objection, as to alleged defalcations of Perrin prior to the larceny, and the condition of his accounts with the Iron Exchange Bank, of which Perrin was an employee. The object of

this testimony seems to have been to show that Perrin might have a motive to commit the larceny in order to make good his alleged defalcations. There is grave doubt in our minds whether any of the testimony was proper against *Baker*. While not deciding this question, we deem it proper to indicate that the safer rule upon another trial would be to exclude it.

We believe there are no other questions raised which demand attention, or, if there are, they will be found passed upon in the case of *Perrin v. State*, 81 Wis. ——[1] (decided herewith).

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial. The warden of the state prison will surrender the plaintiff in error to the sheriff of Ashland county, who will hold him in custody until he shall be discharged by due course of law.

---

[1] In the case of *Perrin v. State*, a motion for a rehearing was denied February 2, 1892. It will be reported as of that date in 81 Wis.— REP.