STATE of Wisconsin, Plaintiff-Respondent,

v.

Patrick J. DORCEY, Defendant-Appellant-Petitioner.

Supreme Court

*No. 79–1171–CR.  Argued April 29, 1981.—Decided June 30, 1981.*

(Also reported in 307 N.W.2d 612.)

For the petitioner there were briefs and oral argument by *Louis B. Butler, Jr.*, assistant state public defender.

For the respondent the cause was argued by *Sally L. Wellman*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

STEINMETZ, J.   This case comes before the court on a petition to review a decision of the court of appeals which affirmed a decision of the circuit court for Milwaukee county, the Honorable MARVIN C. HOLZ, circuit court judge.  At issue is the application of evidentiary rules on alleged hearsay and whether the defendant was denied the right of confrontation.

The defendant Patrick J. Dorcey was charged with delivery of cocaine as a party to a crime contrary to secs. 161.16(4), 161.41(1)(b) and 939.05, Stats.  A preliminary hearing was held on March 1 and 2, 1978, before the Honorable Patrick J. Madden.  The state called as a witness Deborah Ropicky who testified that on December 9, 1977, at about 12:45 p.m. she saw the defendant Dorcey at Gerald Eickstaedt's house in South Milwaukee.  Ropicky testified that she was present in the kitchen with Dorcey and Eickstaedt and she heard them talking.  She stated, "I heard Patrick Dorcey say to Gerald Eickstaedt that if the other ounce of cocaine was sold within a couple days, that Pat [Dorcey] would give it to Jerry [Eickstaedt] for $1,850."

The state then called Officer Glenn Lewis.  Lewis was an undercover officer investigating the drug trade at the time in question.  He testified that he met Eickstaedt in Eickstaedt's house on December 9, 1977, at about 11:45 a.m.  Lewis was asked to testify as to the contents of a conversation he had with Eickstaedt at that time.

Defense counsel objected on the grounds that testimony as to this conversation was inadmissible hearsay and would deprive the defendant of his constitutional right to confront the witnesses against him. In anticipation of this testimony, the defense had already submitted to the court a detailed memorandum explaining the rules of hearsay and arguing against the admissibility of Lewis's testimony. The court ruled that if the state could show probable cause that a conspiracy existed between Dorcey and Eickstaedt, then hearsay testimony as to Eickstaedt's statements would be admissible against Dorcey. Eickstaedt was unavailable to testify as he had died six weeks before the preliminary hearing.

Officer Lewis then testified that Eickstaedt had offered to sell Lewis up to two ounces of cocaine for $2,-150 per ounce. Lewis expressed a desire to buy one ounce. Eickstaedt stated this would cause some problem, since he thought Lewis wanted to buy two ounces and that he would have to make a phone call to work it out. According to Lewis, Eickstaedt stated that he had a source who could supply "top shelf" cocaine and that if Lewis would give Eickstaedt the money, Eickstaedt would take the money to the source and return in a few minutes with the drug. Lewis refused to give Eickstaedt the money until he saw the cocaine. Eickstaedt then went to the telephone and Lewis testified that he overheard Eickstaedt as follows:

"He stated, 'I have a dude here who wants to buy some cocaine; he only wants one ounce.' There was a pause. He stated, 'He won't front me the money.' Another pause. He said, 'I'll meet you a half a block from the liquor store in about ten minutes,' and terminated the conversation."

Eickstaedt then told Lewis that he would return in 15 minutes. Lewis observed Eickstaedt leave the house and

drive away in a Buick Riviera at about 12:05 p.m. Eickstaedt returned about 12:20 p.m. He removed his gloves and inside one glove was a plastic bag with some white powder in it. Lewis gave Eickstaedt $2,150 and left the house with the powder, which was later determined to be cocaine.

The state called two other officers to testify. Officer Richard Tarczynski testified that at 11:45 a.m. he saw Eickstaedt and Lewis enter Eickstaedt's house and that at 12:05 p.m. he saw Eickstaedt leave the house, enter a Buick, drive a few blocks and park. At 12:20 p.m. he saw the same Buick parked in the driveway of Eickstaedt's house and at 12:50 p.m. he saw both the Buick and a Pontiac LeMans parked in the driveway.

Officer George Hegerty testified that at 12:10 p.m. he saw Eickstaedt parked in a Buick Riviera on Park Place, a few blocks from Eickstaedt's house. He saw a Pontiac LeMans driven by the defendant Dorcey park directly behind Eickstaedt's car. According to Hegerty, Dorcey got in the front seat of the Buick next to Eickstaedt. The two appeared to converse. Dorsey then returned to his own car and both cars drove away.

The court ruled that there was probable cause that a conspiracy existed between the defendant and Eickstaedt and that consequently the testimony of Officer Lewis was admissible.

Before the trial court the defense again moved to exclude Officer Lewis's account of what Eickstaedt said. The court ruled that this testimony was admissible as the statement of a co-conspirator and that it was reliable since Eickstaedt's statements were against his penal interests. Deborah Ropicky, Lewis and the other officers gave substantially the same testimony at trial as at the preliminary hearing.

The defendant was convicted of one count of delivery of a controlled substance as party to a crime and sen-

tenced to the state prison for an indeterminate term of not more than one year.

The court of appeals affirmed the judgment, stating that the testimony of Officer Lewis was admissible as a statement by Eickstaedt against his penal interests under sec. 908.045(4), Stats.[1] The court of appeals ruled that there was no constitutional bar to the admissibility of the testimony in question. The appellant-petitioner also raised several other issues before the court of appeals which he chose not to argue on this review. The issues before this court are: (1) Was the testimony of Officer Lewis admissible under the Wisconsin Rules of Evidence (ch. 908, Stats.), and (2) if admissible under the statutes, was it barred by the Confrontation Clauses of the United States and Wisconsin Constitutions?

## RULES OF EVIDENCE

The trial court found that the testimony of Officer Lewis was admissible as a statement of a co-conspirator. Under the general rule, hearsay testimony is not admissible. Sec. 908.02, Stats., states:

"908.02 **Hearsay rule.** Hearsay is not admissible except as provided by these rules or by other rules adopted by the supreme court or by statute."

Sec. 908.01(4)(b)5, Stats., provides:

"908.01 **Definitions.** The following definitions apply under this chapter:

"...

"(4) STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if:

"...

"(b) *Admission by party opponent.* The statement is offered against a party and is:

"...

"5. A statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

Under this rule statements of a co-conspirator made "during the course and in furtherance of the conspiracy" are admissible against any or all parties to the conspiracy. By definition such statements do not constitute hearsay and are therefore outside the rule which excludes hearsay testimony. *Bergeron v. State,* 85 Wis.2d 595, 612, 271 N.W.2d 386 (1978). In order for the statements to be admissible, however, it must be established that there is a conspiracy between the declarant and the party to the suit. Not all of the elements of the substantive crime of conspiracy need be proven, however, and the defendant need not be charged with conspiracy. 22A C.J.S., *Criminal Law* sec. 758b (1961); *Caccitolo v. State,* 69 Wis.2d 102, 230 N.W.2d 139 (1975); *O'Neil v. State,* 237 Wis. 391, 296 N.W. 96 (1941). The quantum of proof required is a *prima facie* showing, that is, "the declarations of one coconspirator will not be received against another until a *prima facie* case of a conspiracy has first been made." *State v. Timm,* 244 Wis. 508, 518, 12 N.W.2d 670 (1944); *see also Gelosi v. State,* 215 Wis. 649, 255 N.W. 893 (1934); 22A C.J.S., *Criminal Law* sec. 760b (1961); *contra see United States v. Gil,* 604 F. 2d 546, 548 (7th Cir. 1979); McCormick, *Evidence* 645 (2d. 1972).

The conspiracy upon which admissibility depends must be proven independently of the hearsay testimony at issue. "Otherwise, hearsay would lift itself by its own bootstraps to the level of competent evidence." *Glasser v. United States,* 315 U.S. 60, 75 (1942) ; *Federal Life Ins. Co. v. Thayer,* 222 Wis. 658, 667, 269 N.W. 547 (1936). However, the conspiracy may be proved by circumstantial evidence, *Gelosi v. State, supra* at 654, and the court may hear the disputed testimony first, contingent upon a later showing that there was a conspiracy. *United States v. Halpin,* 374 F.2d 493 (7th Cir. 1967) ; *Schultz v. State,* 133 Wis. 215, 113 N.W. 428 (1907). If the conspiracy is established, the declarations of one co-conspirator are admissible against another whether or not they were made in the presence of a co-conspirator. 22A C.J.S.; *Criminal Law* secs. 775, 776 (1961) ; *State v. Timm, supra.*

Finally, since the rule is limited to statements made "during the course and in furtherance of the conspiracy," it is necessary to determine when the conspiracy began and ended. As we stated in *Bergeron v. State, supra* at 613:

"The issue of the admission of inadmissible hearsay is dependent upon a factual question as to when the conspiracy began and terminated. The trial court must rule on the admissibility of such statements or acts. This ruling has the weight of any other finding of fact, and will be dealt with as such on appeal. *Schultz v. State,* 125 Wis. 452, 104 N.W. 90 (1905). Just as the termination of a conspiracy cannot be determined by a hard and fast rule, neither can the commencement. Commencement and termination must be determined by the particular facts in each case. *State v. Adams,* 257 Wis. 433, 43 N.W.2d 446 (1950). A conspiracy commences with an agreement between 2 or more persons to direct their conduct toward the realization of a criminal objective and each member

of the conspiracy must individually and consciously intend the realization of the particular criminal venture. Additionally, each conspirator must have an individual stake in the conspiracy. *State v. Nutley, supra* at 556."

In the present case the record shows that all of the above requirements were fulfilled. According to the state's evidence, Lewis went to Eickstaedt's house to purchase cocaine. Eickstaedt left the house for 15 minutes and upon his return sold Lewis one ounce of the drug. Surveillance officers observed Eickstaedt and the defendant meet in a car during the time that Eickstaedt was gone from his house. Deborah Ropicky testified that a short time after Lewis left the house she saw the defendant in the house and heard him tell Eickstaedt that if he could sell the other ounce, he would give it to Eickstaedt for $1,850. At that time surveillance officers saw the defendant's car in Eickstaedt's driveway. This evidence is sufficient to establish a *prima facie* case of conspiracy, so far as the rules of evidence are concerned.

The petitioner has argued that the statements by Deborah Ropicky are not admissible to prove the existence of a conspiracy because her observations occurred after the sale and thus after the termination of the conspiracy. This argument must fail because it is based on an excessively narrow concept of the commencement and termination of a conspiracy, a concept we rejected in *Bergeron*. "Commencement and termination [of a conspiracy] must be determined by the particular facts in each case." *Bergeron, supra* at 613. In the present case the lower courts viewed a statement made by the defendant shortly after the sale of the first ounce and relating to the sale of the second ounce as part of an ongoing conspiracy between the defendant and Eickstaedt to sell cocaine. This ruling "has the weight of any other finding

of fact, and will be dealt with as such on appeal." *Bergeron, supra* at 613. On appeal, findings of fact will be upheld unless contrary to the great weight and preponderance of the evidence. In the present case the findings are not contrary to the evidence and thus we affirm the lower courts' finding of a conspiracy between Eickstaedt and the defendant.

Although the lower court stated the standard as one of probable cause that a conspiracy existed rather than as a *prima facie* case of conspiracy, it is apparent that there is sufficient evidence to sustain a finding of conspiracy under either standard.

We conclude that evidence was presented apart from Lewis's account of what Eickstaedt said which was sufficient to establish the fact of conspiracy. Under sec. 908.01 (4) (b) 5, Stats., therefore, Lewis's account of Eickstaedt's statements was admissible and it is not controlling that they were made out of the presence of the co-conspirator, Dorcey.

## CONFRONTATION CLAUSE

The Sixth Amendment to the United States Constitution provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

Art. I, sec. 7 of the Wisconsin Constitution provides, in part:

"In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face."

The provisions of the Sixth Amendment are applicable to the states through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400 (1965).

The relationship between the Confrontation Clause and the rules of hearsay was most recently explained by the

United States Supreme Court in *Ohio v. Roberts,* 448 U.S. 56 (1980). In that case the court reiterated its ruling that the confrontation clause bars the admission of some hearsay evidence. *Roberts, Id.* at 63; *California v. Green,* 399 U.S. 149, 156–57 (1970). It also made it clear that the Confrontation Clause was not intended to abrogate all the exceptions to the rule which declares hearsay inadmissible. *Roberts, supra* at 63.

The court described two principles for determining whether or not absent witness statements are barred by the Sixth Amendment. In the words of the court:

"The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. *See Mancusi v. Stubbs,* 408 U.S. 204 (1972); *Barber v. Page,* 390 U.S. 719 (1968). *See also Motes v. United States,* 178 U.S. 458 (1900); *California v. Green,* 399 U.S., at 161–162, 165, 167, n. 16.

"The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the fact-finding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' *Snyder v. Massachusetts,* 291 U.S., at 107." *Roberts, supra* at 65.

In the present case the declarant, Gerald Eickstaedt, died six weeks before the preliminary hearing. It is thus indisputable that he was not available to testify at the preliminary hearing or the trial and the "rule of necessity" is satisfied. The second qualifying principle is concerned with the "trustworthiness" of the hearsay evidence. On this principle the court stated:

"The principle recently was formulated in *Mancusi v. Stubbs:*

" 'The focus of the Court's concern has been to insure that there "are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant," *Dutton v. Evans, supra,* at 89, and to "afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement," *California v. Green, supra,* at 161. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these "indicia of reliability." 408 U.S., at 213.'

"The Court has applied this 'indicia of reliability' requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' *Mattox v. United States,* 156 U.S., at 244 . . . .

"In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' *Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.* In other cases, the evidence must be excluded, at least absent a showing or particularized guarantees of trustworthiness." *Roberts, supra* at 65–66. (Emphasis supplied.)

The exception which allows the admission of hearsay statements made by a co-conspirator is well-rooted in Wisconsin law. Almost 90 years ago the Wisconsin Supreme Court stated:

"The principle is well established that evidence of the acts and declarations of co-conspirators, if made pending the conspiracy, and in furtherance of, or with reference to, the common design, are admissible against all . . . ." *Baker v. State,* 80 Wis. 416, 420, 50 N.W. 518 (1891).

The statements of Eickstaedt related by Officer Lewis being in furtherance of a conspiracy with the defendant were not hearsay (sec. 908.01(4)(b)5, Stats.). However, they must face the challenge of the defendant's constitutional right to confrontation and cross-examination. The declarant in this case, Eickstaedt, never testified against the defendant since he had died before the preliminary examination. The other test for receiving Eickstaedt's statements in evidence is one of trustworthiness. As we said in *State v. Olson,* 75 Wis.2d 575, 588–91, 250 N.W.2d 12 (1977):

"The confrontation right is not absolute. However valuable to the accused, the right gives way to other legitimate considerations in the criminal trial process. As we said in *Lenarchick,* the United States Supreme Court appears to have concluded that there are instances where even though there is no face-to-face confrontation, the due process and confrontation requirements are satisfied. Under some circumstances it appears that an uncross-examined statement is clothed with special indicia of trustworthiness. The hearsay rule and its exceptions may at times satisfy the degree of trustworthiness, but the satisfaction of the hearsay requirements does not necessarily satisfy the confrontation rule. Determining whether the right to confront and to cross-examine must give way in any particular instance 'calls into question the ultimate "integrity of the fact-finding process" and requires that the competing interest be closely examined.' Courts have balanced such factors as: whether the witness is unavailable and the prosecution has made good faith and reasonable efforts to procure the witness; whether the evidence has high standards of assurance of reliability or trustworthiness; whether the evidence is admissible under an exception to the hearsay rule; whether the statements introduced are subject to divergent views; whether there is high probability of assurance that the cross-examination of the witness would not cast any doubts on the admitted statements; whether the defendant's objection to the evidence was raised via other testimony during the trial; whether the defendant had

been afforded prior opportunities for cross-examination of the witness; whether the evidence is collateral or probative of an element of the crime; whether the evidence ties the defendant directly to the crime; and whether the practical considerations of convenience and speedy trials outweigh the inconvenience of producing the witness."

As we stated in *State v. Olson, supra* at 588–89, quoting from 5 Wigmore, *Evidence,* sec. 1397, at 184–85 (Chadbourn Rev. 1974):

"In this line of cases, it is clear that the Court has refused to equate the Sixth Amendment's confrontation clause and any particular version of the hearsay rule—ancient or modern. The net result is acknowledgement by the Court of the possibility of legitimate expansion and supplementation of the classically recognized exceptions, with however the corollary possibility of disapproval of the application in some circumstances of the recognized exceptions. Perhaps we can expect nothing more definite in this area than a case-by-case approach, which takes into account in each case such factors (*e.g.*, 'indicia of reliability') as proved influential with the *Dutton* Court. This may produce nothing more precise or predictable than the 'totality of the circumstances' standard once so widely used in the area of confessions law . . . . Nevertheless, it will probably not be gainsaid that uncertainty as to the permissible dimensions of any system of hearsay law is preferable to permanently constitutionalizing or freezing that law into its ancient molds."

The indicia of reliability in the totality of circumstances in this case are that the statements of Eickstaedt related by Officer Lewis have a high standard of assurance of trustworthiness. They were made in furtherance of a conspiracy with the defendant and were made by him in the presence of Lewis whom he did not know to be an officer at the time.

The statements were against Eickstaedt's penal interests (sec. 908.045(4), Stats., *supra*, n. 1) and did not inculpate the defendant by name. None of Eickstaedt's statements testified to by Officer Lewis identified the

defendant Dorcey as his co-conspirator. Dorcey's involvement in the crime was proven circumstantially by the observations of others than Eickstaedt and inferentially by considering Eickstaedt's statements. Under these circumstances, it is extremely unlikely that Eickstaedt's statements were merely an invention by him designed to inculpate Dorcey in a crime he did not commit.

Another indicium of the trustworthiness of Eickstaedt's statements was provided by the testimony of Deborah Ropicky. She stated at trial her observations of Eickstaedt and Officer Lewis (whom she knew as Al but did not know to be an officer at that time) together at Eickstaedt's house. She observed Eickstaedt leave the house and then return. Upon returning the two men went to the basement and then Lewis left the house. These physical observations were all consistent with Officer Lewis's testimony of the circumstances surrounding Eickstaedt's statements. She then testified that a short time after Lewis left the house, Dorcey arrived and Eickstaedt and Dorcey were together in the house when she heard the defendant's statement regarding the second ounce of cocaine.

The trial court properly allowed Officer Lewis to testify as to the statements of Eickstaedt to him and those made in his presence over the phone.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). I dissent because the majority has erred in its analysis and application of *Ohio v. Roberts* and of this court's prior cases.

In *Ohio v. Roberts* the United States Supreme Court acknowledged the criticisms[1] of its prior efforts to recon-

---

[1] *See* authorities cited at 448 U.S. 66–68, at n. 9.

Justice Heffernan, writing for the court in 1976 in *State v. Lenarchick*, 74 Wis.2d 425, 442, 247 N.W.2d 80 (1976), commented on

cile the confrontation clause and the hearsay rules, but declined "to begin anew." The Supreme Court instead decided to continue the "general approach to the problem" it took in its earlier cases, an approach which the Court described "as discernible" and "as having demonstrated success in steering a middle course among proposed alternatives." *Ohio v. Roberts,* 448 U.S. 56, 66–68, n. 9 (1980).

This case is the first case in which this court[2] has attempted to reconcile *Ohio v. Roberts* with this court's de-

the "murkiness of the United States Supreme Court's holdings" in the hearsay-confrontation cases.

In 1979 Professor Westen, in an article analyzing *Ohio v. Roberts,* 55 Ohio St. 2d 191, 378 N.E.2d 492 (1978), *cert. granted* 441 U.S. 904 (1979), which the Court was soon to decide, wrote that the Supreme Court's decisions dealing with the confrontation-hearsay issue have created "uncertainty," "anarchy" and "confusion." Westen, *The Future of Confrontation,* 77 Mich. L. Rev. 1185, 1215 (1979). Professor Westen expressed the hope that the Court would clarify its prior decisions in the forthcoming *Ohio v. Roberts* case. Professor Westen expressed the concern that the United States Supreme Court might dispose "of *Roberts* . . . narrowly, on the ground that the defendant's direct examination of Smith Isaacs was comparable to the cross-examination in *Green.* If it takes that route," wrote Professor Westen, "it will have added nothing to the existing jurisprudence of confrontation, and will have decided the case on idiosyncratic facts that are unlikely ever to recur." 77 Mich. L. Rev. at 1214–1215.

[2] In two recent cases involving hearsay-confrontation, the court did not refer to *Ohio v. Roberts* and appeared to favor the views expressed by Justice Harlan in his concurring opinions in *California v. Green,* 399 U.S. 149 (1970) and in *Dutton v. Evans,* 400 U.S. 74, 95–96 (1970), despite the fact that in *Ohio v. Roberts,* 448 U.S. at 66, n. 9, the majority referred to "the Court's implicit rejection of principal alternative proposals, *see Dutton v. Evans,* 400 U.S. at 93–100 (concurring opinion) and *California v. Green,* 399 U.S. at 172–189 (concurring opinion) . . . ." *See Hagenkord v. State,* 100 Wis. 2d 452, 472–473, 302 N.W.2d 421 (1981), and *Robinson v. State,* 102 Wis. 2d 343, 353, 306 N.W.2d 668 (1981).

cisions dealing with the confrontation-hearsay issue under the federal and Wisconsin Constitutions.[3]

Justice Harlan in his concurrence in *California v. Green*, 399 U.S. 149, 172 (1970), adopted a due process approach to the confrontation clause. In *Dutton v. Evans*, 400 U.S. 74, 93 (1970), Justice Harlan abandoned the position he took in *Green* that the constitution requires the prosecution to present an available witness but continued to stress his view that the standard on admissibility of evidence is one of due process.

Justice Marshall in his dissent in *Dutton v. Evans*, 400 U.S. 74, 100, 110 (1970), criticized the plurality's "indicia of reliability" test and Justice Harlan's due process test as follows:

"If 'indicia of reliability' are so easy to come by, and prove so much, then it is only reasonable to ask whether the Confrontation Clause has any independent vitality at all in protecting a criminal defendant against the use of extrajudicial statements not subject to cross-examination and not exposed to a jury assessment of the declarant's demeanor at trial.[11] I believe the Confrontation Clause has been sunk if any out-of-court statement bearing an indicium of a probative likelihood can come in, no matter how damaging the statement may be or how great the need for the truth-discovering test of cross-examination. . . . .

[11] MR. JUSTICE HARLAN answers this question with directness by adopting, to decide this case, his view of due process which apparently makes no distinction between civil and criminal trials, and which would prohibit only irrational or unreasonable evidentiary rulings. Needless to say, I cannot accept the view that Evans' constitutional rights should be measured by a standard concededly having nothing to do with the Confrontation Clause."

[3] Amend. VI, U. S. Const.: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

Art. I, sec. 7 of the Wis. Const. requires that "in all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face."

The Judicial Council Committee's Note—1974 to Rule 908.01, 59 Wis.2d R221, states that "the confrontation clause of the Wisconsin constitution appears to have been interpreted by the Wisconsin Supreme Court consistently with the United States Supreme Court's interpretation of the sixth amendment confrontation clause." (Citations omitted.)

I write to state the basis for my disagreement with the reasoning of the majority opinion and to set forth an analysis of the confrontation-hearsay issue which I believe is consistent with *Ohio v. Roberts* and with the case law of this state. The analysis does not offer a trouble-free solution to the confusing state of the present case law. It does, however, reflect the judgment of the United States Supreme Court and of this court that despite the confusion, we will continue on the path already taken.

I conclude that the trial courts in this state, faced with a state and federal constitutional hearsay-confrontation question, should determine the admissibility of the evidence as follows:

First, the prosecutor must demonstrate that the witness is unavailable in the constitutional sense. *Ohio v. Roberts,* 448 U.S. at 65, 66, 74–77 (1980).

Second, the prosecutor must demonstrate that the hearsay exception within which the proffered evidence falls is marked with trustworthiness, with "indicia of reliability." *Ohio v. Roberts,* 448 U.S. at 65–73. The hearsay exception must bear sufficient indicia of reliability that the evidence "may satisfy the strictures of the Constitution which guarantee the right of confrontation." *Hagenkord v. State,* 100 Wis.2d 452, 469, 302 N.W. 2d 421 (1981).

Third, the prosecutor must demonstrate that the evidence in the particular case has "the indicia of reliability in the totality of circumstances in this case," (majority opinion *supra,* p. 164, relying on *State v. Olson,* 75 Wis.2d 575, 588–91, 250 N.W.2d 12 (1977)). As we have previously said, "each confrontation claim must stand on its own facts, and it is apparent that not all of the balancing factors of *Olson* are applicable to every case." *Hagenkord v. State,* 100 Wis.2d 452, 475–476, 302 N.W.2d 421 (1981).

In this case the evidence in issue is that of a police officer who testified to what Eickstaedt said when Eick-

staedt made a telephone call in the police officer's presence. The majority holds that this testimony is not hearsay but a statement by a co-conspirator of a party made during the course of and in furtherance of a conspiracy. Rule 908.01(4)(b)5, Stats. 1979–80.[4] I agree with the majority that this conclusion does not solve the problem of whether the admission of this testimony violates the defendant's Sixth amendment right to confrontation.[5] I turn to apply the analysis I have set forth above.

## I.

There is no question in this case that the witness is unavailable in the constitutional sense of the word. For a discussion of constitutional unavailability, *see, e.g., Ohio*

---

[4] Rule 908.01(4)(b), Stats. 1979–80, provides:

"(4) . . . A statement is not hearsay if . . . (b) *Admission by party opponent.* The statement is offered against a party and is 1) his own statement, in either his individual or a representative capacity, or 2) a statement of which he has manifested his adoption or belief in its truth, or 3) a statement by a person authorized by him to make a statement concerning the subject, or 4) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or 5) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."

[5] The Judicial Council Committee's Note—1974 to Rule 908.01 (4)(b), 59 Wis.2d R240, explains: "Exclusion of evidential admissions from the category of hearsay is a technical change in Wisconsin law. Wisconsin has considered admissions as a hearsay exception. . . . Exclusion of evidential admissions from the category of hearsay has no substantive effect, places the receipt of admissions upon the more rational basis of the nature of the adversary system and results in no alteration of the effect of prior Wisconsin decisions. The reasons for the hearsay rule are not applicable. There is no need for a party to cross-examine himself nor should he be heard to require that his own statements be under oath. It also simplifies the analysis of hearsay because most admissions are out-of-court statements and since some admissions are by conduct or silence, it places them with other circumstantial evidence outside the hearsay category."

*v. Roberts; Lenarchick v. State,* 74 Wis.2d 425, 247 N.W. 2d 80 (1976) ; *State v. Olson,* 75 Wis.2d 575, 250 N.W.2d 12 (1977) ; *Virgil v. State,* 84 Wis.2d 166, 267 N.W.2d 852 (1978) ; *Vogel v. State,* 96 Wis.2d 372, 291 N.W.2d 838 (1980) ; *Hagenkord v. State,* 100 Wis.2d 452, 302 N.W.2d 421 (1981) ; *Robinson v. State,* 102 Wis.2d 343, 306 N.W.2d 668 (1981).

## II.

A more difficult question in the case at bar is whether the hearsay exception within which the police officer's testimony falls is marked with trustworthiness. As the Supreme Court said in *Ohio v. Roberts,* 448 U.S. at 65, quoting *Mancusi v. Stubbs,* 408 U.S. 204, 213 (1972) : "The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' *Dutton v. Evans, supra* at 89, and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement' . . ."

The majority opinion concludes that the "hearsay exception" allowing admission of the co-conspirator's statements is marked with trustworthiness and that the evidence in this case is admissible. The majority opinion can be read to say the majority reaches this conclusion by relying on a sentence in *Ohio v. Roberts,* namely, *"Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception"* (emphasis in majority opinion at p. 162), and by noting that the "hearsay exception" applicable here has been recognized by this court since 1891.[6] If so, the majority

---

[6] *Baker v. State,* 80 Wis. 416, 420, 50 N.W. 518 (1891), does not involve an assertion of denial of the right of confrontation as does this case.

finds the constitutional issue of hearsay-confrontation to be one which is decided by determining the length of time that the state has recognized the general exception to hearsay. I reject this view both as a matter of interpretation of *Ohio v. Roberts* and as a matter of constitutional analysis. If the majority is equating "firmly rooted" with the antiquity of the hearsay exception, such an interpretation does not represent a continuance of the Supreme Court's general approach to the problem. The majority's own discomfort with equating reliability and antiquity is seen when the majority, contrary to the United States Supreme Court's analysis in *Ohio v. Roberts,* reviews the reliability of the testimony in issue after it concludes that the testimony falls within a firmly rooted exception.

As I interpret the *Ohio v. Roberts* decision, the issue of whether a hearsay exception is "firmly rooted" depends on whether it involves special circumstances which guarantee the trustworthiness and reliability of the evidence admitted thereunder to the degree necessary to satisfy the requirements of the confrontation clause. If the hearsay exception is "firmly rooted" then the court will not generally undertake a particularized search to determine the reliability of the testimony in issue.[7]

---

[7] When the prosecutor demonstrates that the evidence falls within a firmly rooted hearsay exception which is marked with trustworthiness, the United States Supreme Court indicated that the trial court may generally admit the evidence without further exploration of the reliability of the particular evidence. In *Ohio v. Roberts,* 448 U.S. at 72–73, the Court rejected Roberts' request that the Court undertake a particularized search for indicia of reliability of the evidence in that case once the Court determined that the evidence fell within the *California v. Green* former testimony exception. Nevertheless, the facts of a case may require analysis by the trial court to determine whether the application of the exception in the particular case results in the admission of sufficiently reliable evidence; in such a case the trial court in ruling on admissibility must balance the various competing factors set forth in

As the United States Supreme Court said in the text preceding the "firmly rooted hearsay" sentence, the exception must rest

". . . *upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.'* Mattox v. United States, 156 U.S., at 244. This reflects the truism that 'hearsay rules and the Confrontation Clause are generally designed to protect similar values,' *California v. Green*, 399 U.S., at 155, and 'stem from the same roots,' *Dutton v. Evans*, 400 U.S. 74, 86 (1970). It also responds to the need for certainty in the workaday world of conducting criminal trials.

"In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. at 66 (emphasis added).

The "solid foundations" of each hearsay exception is not the length of time the exception has been recognized. Some of the long-established exceptions may on close analysis be found not to rest on guarantees of trustworthiness sufficient to satisfy the confrontation clause test. To determine whether the exception has a "solid foundation" requires an analysis of the rationale of the hearsay exception.

Both the United States Supreme Court and this court have analyzed the conceptual reliability of the particular hearsay exception pursuant to which the evidence was admitted when considering a claim of denial of the right of confrontation was before the court. Thus in *Ohio v.*

---

*Olson* to assess the effect of the admission of the evidence on the integrity of the fact-finding process in that case.

*Roberts* the Court applied the standards set forth in *California v. Green,* 399 U.S. 149 (1970), which involved admission of evidence within the same hearsay exception which was involved in *Roberts,* and concluded that where defense counsel in fact, although not in form, cross-examined a witness at a prior hearing, the hearsay testimony of a witness in a prior proceeding bore sufficient "indicia of reliability" under the confrontation clause. The evidence was constitutionally admissible, the Court held, " '[s]ince there was an adequate opportunity to cross-examine [the witness], and counsel . . . availed himself of that opportunity, the transcript . . . bore sufficient "indicia of reliability" and afforded " 'the trier of fact a satisfactory basis for evaluating the truth of the prior statement.' " ' 408 U.S., at 216." *Ohio v. Roberts,* 448 U.S. at 73.

While evidence falling within this specifically defined aspect of the "former testimony" exception apparently satisfies the constitutional confrontation command, the United States Supreme Court specifically stated that it was not deciding whether former testimony would be admissible over confrontation objections if in the former proceeding the defendant, although having an opportunity to cross-examine the witness, did not engage in cross-examination or engaged in *de minimis* cross-examination. Both events are, however, apparently sufficient to render the former testimony admissible under the hearsay exception. Rule 908.045, Stats. 1979–80; *Ohio v. Roberts,* 448 U.S. at 70. Thus, in *Ohio v. Roberts,* the court analyzed a particular aspect of the broad "former testimony" hearsay exception to determine whether evidence satisfying that particular aspect of the exception passed the "indicia of reliability" test. It is important to note that the Court did not say that all evidence within the "former testimony" exception has sufficient reliability in a confrontation analysis. *See also, e.g., Hagen-*

*kord v. State,* 100 Wis.2d 452, 469–471, 302 N.W.2d 421 (1981).

The issue under the second stage of my analysis is therefore whether the statements of a co-conspirator of a party during the course of and in furtherance of the conspiracy, Rule 908.01(4)(b)5, Stats., are admissible because this exception has special assurances of reliability that comport with the substance of the constitutional protection of the confrontation clause.

Two grounds for admitting statements of co-conspirators are generally recognized: (1) under the substantive law of agency a conspirator is liable for the acts of the other conspirators; and (2) admissions against interest are admissible. *See* 4 Wigmore Evidence, secs. 1048, 1077, 1079, pp. 4–5, 158, 160, 180 (Chadbourne Ed. 1977) ; Note, *Preserving the Right to Confrontation—A New Approach to Hearsay Evidence in Criminal Trials,* 113 U. Pa. L. Rev. 741, 754–756 (1965). The constitutional issue under either theory is whether the rule provides assurance that evidence admitted pursuant thereto is reliable. The generally held view is that neither theory incorporates an assurance of reliability. The commentary of the Federal Advisory Committee on the federal rules of evidence printed with Rule 908.01(4)(b) states that "the agency theory of conspiracy is at best a fiction," 59 Wis.2d at R248, and that "[a]dmissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule." 59 Wis.2d at R245.

Attorney Davenport explained that the rule admitting statements of co-conspirators rests on several theories, but not primarily on the theory that the evidence is inherently highly reliable:

"Interestingly enough, while numerous exceptions to the hearsay rule, such as those for spontaneous exclamations and declarations against interest, rest primarily on a theory that the excepted hearsay by its very nature contains special guarantees of reliability lacking in hearsay generally, the co-conspirator exception has usually been supported by a variety of theories unrelated to the trustworthiness of the evidence itself. This is not to say that reliability has never been asserted as a justification, at least in the sense that prejudicial out-of-court statements by one conspirator can generally be considered declarations against his own interest as well as against that of his fellows. Rather, the major development of the exception has been the result of a seemingly random appeal to various of the following rationales: (1) a characterization of conspiracy as a relationship of mutual agency, with the admissions of one conspirator thereby being treated as vicarious admissions by the others; (2) a characterization of many of the statements of conspirators as 'acts' of the conspiracy (elements, in themselves, of the crime) ; and (3) an allegation of special need for lax rules of evidence in prosecutions for such a traditionally secret and inchoate crime." Davenport, *The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecution: A Functional Analysis,* 85 Harv. L. Rev. 1378, 1384 (1972).

The co-conspirator rule has traditionally been supported on the theory of necessity rather than on the theory of trustworthiness.[8] As one student commentator noted:

"Courts generally admit vicarious admissions on the ground that a principal's substantive responsibility for his agent's acts entails an evidential responsibility for his agent's statements. Professor Morgan has persuasively argued that this line of reasoning is fallacious, since vicarious substantive responsibility is based on social policies unrelated to the reliability and necessity of evidence. . . .

---

[8] The Seventh Circuit Court of Appeals has implicitly acknowledged that "the exception is largely a result of necessity." *United States v. Gil,* 604 F.2d 546, 549 (7th Cir. 1979).

" . . .

"It has been said that admission of co-conspirators' hearsay declarations is justified by necessity. The suggestion is that criminal agreements are inherently secret, that participation is possible without commission of overt acts, and consequently that there is a necessity sufficient to justify admission of hearsay of questionable reliability. . . .

"There is good reason, however, to believe that testimony of oral declarations in furtherance is likely to be extremely unreliable. Not only might the declarations be inadvertently misreported, but in an uncertain case there is pressure on the prosecution to fabricate evidence. This may easily be done in a conspiracy case, where testimony may be elicited from conspirators as yet untried or unsentenced, and where alleged auditors of declarations may be chosen from a wide range of participants and events, with a view to making investigation and cross-examination most difficult.

"The absence of a guarantee of reliability for co-conspirators' declarations, and their ease of fabrication, present a strong case for rejection of the hearsay exception. . . ." Comment, *The Hearsay Exception For Co-Conspirators' Declarations,* 25 U. Chi. L. Rev. 530, 533–34, 539–541 (1958).

Attorney Joseph Levi, in his article *Hearsay and Conspiracy—A Reexamination of the Co-Conspirators' Exception to the Hearsay Rule,* 52 Mich. L. Rev. 1159, 1165–1166 (1954), critically analyzed and rejected the classical agency rationale for the exception and the view that this evidence is trustworthy, saying:

"The agency argument accordingly fails because it shows no reason for exempting conspirators' utterances from the hearsay rule. To say that the substantive law does so only begs the question. The rules of agency govern the substantive law of conspiracy; they decide who is a member of the conspiracy. As such they are involved in determining *against whom* the evidence may be admitted. The point is that they are not relevant in determining *why* it should be admitted.

"Wigmore's theory that such declarations are admitted because they are trustworthy and accordingly' the need for cross-examination is less acute fares no better. Wigmore argues that since the interest of all conspirators is identical, an admission of one against his interest is against the interest of each. This fails to distinguish between declarations showing the existence of a conspiracy and declarations concerning its membership or aims. Of course sane men do not falsely admit to conspiracy. Conspirators' declarations are good to prove that some conspiracy exists but less trustworthy to show its aims and membership. The conspirator's interest is likely to lie in misleading the listener into believing the conspiracy stronger with more members (and different members) and other aims than in fact it has. It is no victory for common sense to make a belief that criminals are notorious for their veracity the basis for law.

"We must conclude therefore that neither of these proposed rationales of agency or of trustworthiness is very impressive. Meanwhile the co-conspirators' exception has expanded rather than shrunk which is not typical of rules without a reason. The true reason for the exception explains both its growth and the parallelism of that expansion to the expansion of the law of conspiracy. That reason is simple: there is great probative need for such testimony. Conspiracy is a hard thing to prove. The substantive law of conspiracy has vastly expanded. This created a tension solved by relaxation in the law of evidence. Conspirators' declarations are admitted out of necessity."

Another writer has suggested that the co-conspirator admission exception raises a constitutional problem which is best avoided by a determination of reliability in each individual case:

"Several analogies have been made to other hearsay exceptions to justify the admission of a co-conspirator's statement, but the comparisons are not compelling. For instance, initially to consider these statements as vicarious admissions confuses the relationship among conspirators with that of principal and agent. The practical considerations which justify forcing a principal to adopt,

for business and evidence purposes, the statements of his authorized agent are not present with a conspiracy, because its members often lack the power to control or authorize other members' actions. Nor does it follow that because the substantive law of conspiracy holds one conspirator accountable for all acts during the conspiracy, hearsay of one conspirator can be admitted to show that the defendant was a member of the conspiracy. The confrontation clause cannot be so simply ignored by establishing through hearsay the basic fact necessary to justify the admission of hearsay statements under the substantive law of conspiracy.

"The fact that the statements are against the interests of the declarant might be a sufficient rationale for admitting his statements relevant to his participation in the conspiracy. But the assumption that reasonable men do not say things against their interests does not logically extend the inference of reliability to a statement against the interest of another person. As in any other context, the members of a conspiracy might incriminate other individuals either because of revenge or mistake. Furthermore, the conspiracy situation may provide strong motivation to fabricate with regard to the involvement of innocent parties if the claim of their participation would further the group's ends. Thus this exception must stand on its own justification—which seems simply to be that the secret nature of conspiracy or any joint endeavor necessitates the admission of this evidence. However, the difficulties of proving conspiracy should not justify the abrogation of the right to confrontation.

"In light of the lack of an independent rationale or of an adequate substitute for cross-examination to test the truthfulness of a co-conspirator's statements, it might be doubted whether their admission would be constitutional. However, the Constitution would be satisfied if the judge were to make an independent finding of reliability based on the specific case. But the scope of review of such a determination should not be confined by the rubric of trial judges' 'discretion'." Note, *Preserving the Right to Confrontation—A New Approach to Hearsay Evidence in Criminal Trials*, 113 U. Pa. L. Rev. 741 (1965).

I find these analyses persuasive, and I conclude that the co-conspirator rule does not rest upon such solid foundations that admission of virtually any evidence within the rule fully comports with the protections of the confrontation clause. *Ohio v. Roberts,* 448 U.S. at 66.

I turn then to the third stage of the analysis.

## III.

In *Ohio v. Roberts,* 448 U.S. at 66, the United States Supreme Court said that if the evidence does not fall within a firmly rooted hearsay exception, "the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." The next step in this case is to determine whether the prosecutor has made "a showing of particularized guarantees of trustworthiness" so that the evidence should be admitted. The testimony of the police officer must be examined to determine whether it possesses sufficient "indicia of reliability" to justify "plac[ing]" it "before the jury." *Dutton v. Evans,* 400 U.S. 74, 89 (1970) (plurality opinion). Stated differently, the evidence is admissible if indicia of reliability or trustworthiness are present and if the trier of fact will be afforded a satisfactory basis for evaluating the truth of the prior statements. *See also California v. Green,* 399 U.S. 149, 161 (1970). The totality of the circumstances must be considered in determining whether the evidence will be admitted when the defendant has had no opportunity to cross-examine the declarant at trial or to have the fact-finder observe the declarant. The determination of admissibility should be made by the trial court when a proper objection has been made. Conscientious defense counsel should recognize the necessity of making a detailed confrontation clause objection, an offer of proof, and an argument specifically attacking the reliability of the evidence sought to

be admitted over the objection. *State v. Olson,* 75 Wis.2d 575, 250 N.W.2d 12 (1977), furnishes a convenient, although probably incomplete, guide for the attorney in making the objection and for the trial court in weighing the competing applicable factors.

Accordingly I conclude that the matter should be remanded to the trial court to review the facts in this case to determine the "particularized guarantees of trustworthiness" to determine whether admission of the evidence adversely affects the integrity of the fact-finding process. Only after analysis of the particularized guarantees of trustworthiness of the particular evidence in the case can it be determined whether the admission of this evidence violates the confrontation clause. This approach was followed by the Court in *Dutton v. Evans,* 400 U.S. 74, 87 (1970), which, like the case at bar, involved the admission of statements of co-conspirators. In *Dutton v. Evans,* the Court in its plurality opinion assessed the reliability of the testimony offered in that case as follows:

"The confrontation issue arises because the jury was being invited to infer that Williams had implicitly identified Evans as the perpetrator of the murder when he blamed Evans for his predicament. But we conclude that there was no denial of the right of confrontation as to this question of identity. First, the statement contained no express assertion about past fact, and consequently it carried on its face a warning to the jury against giving the statement undue weight. Second, Williams' personal knowledge of the identity and role of the other participants in the triple murder is abundantly established by Truett's testimony and by Williams' prior conviction. It is inconceivable that cross-examination could have shown that Williams was not in a position to know whether or not Evans was involved in the murder. Third, the possibility that Williams' statement was founded on faulty recollection is remote in the extreme. Fourth, the circumstances under which Williams made the statement were such as to give reason to suppose that Williams did not

misrepresent Evans' involvement in the crime. These circumstances go beyond a showing that Williams had no apparent reason to lie to Shaw. His statement was spontaneous, and it was against his penal interest to make it. These are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant.

"The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' California v. Green, 399 US, at 161, 26 L Ed2d at 499. Evans exercised, and exercised effectively, his right to confrontation on the factual question whether Shaw had actually heard Williams make the statement Shaw related. And the possibility that cross-examination of Williams could conceivably have shown the jury that the statement, though made, might have been unreliable was wholly unreal."[9]

The trial court might consider, in addition to the factors set forth by the majority (majority opinion, supra p. 165), that Eickstaedt knew at the time of the sale to Lewis that there had been many drug arrests; that Eickstaedt might have fabricated a source to induce Lewis to

---

[9] The Seventh Circuit Court of Appeals summarized *Dutton* as setting forth the following factors as indicative of reliability of certain out-of-court statements of co-conspirators:

"The *Dutton* plurality opinion sets forth a number of factors which were indicative of reliability in that case: (1) the declaration contained no assertion of a past fact, and consequently carried a warning to the jury against giving it undue weight; (2) the declarant had personal knowledge of the identity and role of participants in the crime; (3) the possibility that the declarant was relying upon faulty recollection was remote; and (4) the circumstances under which the statements were made did not provide reason to believe that the declarant had misrepresented the defendant's involvement in the crime. *Dutton v. Evans, supra,* 400 U.S. at 88–89, 91 S. Ct. 210." *United States v. Snow,* 521 F.2d 730, 734–735 (7th Cir. 1975), *cert. denied* 423 U.S. 1090 (1976).

pay cash before receiving the cocaine; that Eickstaedt gave a statement to the police inculpating Dorcey and had his wife type up a second statement which she described as saying that the statement to the police was given under pressure and was untrue. These factors might indicate that the inference of defendant's involvement which the prosecution is asking the jury to draw from Eickstaedt's telephone conversation is not reasonable or that Eickstaedt's end of the telephone conversation, which was the only part of the telephone conversation overheard, did not accurately reflect what, if anything, was said at the other end of the line. Alternatively, upon consideration, the trial court may find these factors not to be sufficient to render the evidence so unreliable as to be inadmissible. These are factors that the defendant may be able to bring to the jury's attention at trial and may go to the weight and credibility of the evidence, not its inherent reliability. Westen, *The Future of Confrontation*, 77 Mich. L. Rev. 1185, 1212–1213 (1979). This determination should initially be made by the trial court.[10]

As I explained previously, the majority purports to apply the factors set forth in *State v. Olson*, 75 Wis.2d 575, 588–91, 250 N.W.2d 12 (1977), to determine the "particularized guarantees of trustworthiness. I believe the majority's analysis is incomplete. Some of the *Olson* factors are satisfied in this case, *i.e.*, whether the witness is unavailable and the prosecution has made good faith and reasonable efforts to procure the witness; whether the evidence is admissible under an exception to the hearsay rule. Others are highly problematic: whether

[10] *Cf. California v. Green*, 399 U.S. 149, 169–170 (1970); *Hagenkord v. State*, 94 Wis.2d 250, 262–263, 287 N.W.2d 834 (Ct. App. 1979); *Lassiter v. Dept. of Social Services of Durham County, N.C.,* —— U.S. ——, 101 S. Ct. 2153, 2161, 2162, 68 L. Ed. 2d 640 (1981).

the evidence has high standards of assurance of reliability or trustworthiness; whether the statements introduced are subject to divergent views; whether there is high probability of assurance that the cross-examination of the witness would not cast any doubts on the admitted statements; whether the defendant's objection to the evidence was raised via other testimony during the trial; whether the defendant had been afforded prior opportunities for cross-examination of the witness; whether the evidence is collateral or probative of an element of the crime; whether the evidence ties the defendant directly to the crime. One *Olson* factor is wholly inapplicable: whether the practical considerations of convenience and speedy trials outweigh the inconvenience of producing the witness. The trial court which heard and saw the witnesses can best evaluate the defendant's challenge that the hearsay testimony offends the confrontation clause. The trial court's determination whether to admit hearsay evidence over a confrontation objection must be the result of a reasoning process which should be set forth on the record for review.

Accordingly, I would remand this case to the trial court for a determination of the reliability of the evidence and the admissibility of the evidence on the basis of the factors set forth in *Olson*. For the reasons set forth, I dissent.