FEDERAL LIFE INSURANCE COMPANY, Appellant, vs. THAYER and others, Respondents.

*October 12—November 10, 1936.*

*Earl A. Korth* of Rhinelander and *Ray C. Dempsey* of Oshkosh, for the appellant.

For the respondents there was a brief by *O'Melia & Kaye,* attorneys, and *Harry L. Reevs* of counsel, all of Rhinelander, and oral argument by *A. J. O'Melia.*

FRITZ, J.   This action was commenced on June 13, 1935, by the plaintiff herein, Federal Life Insurance Company (hereinafter called the insurer), to have Mabel Thayer perpetually enjoined from assigning or enforcing a judgment under which she was held entitled to recover from the insurer the amount of indemnity, which it had agreed to pay to her as the wife of William W. Thayer, in the event of his accidental death under the conditions stated in an accident insurance policy which it had issued to him.   He died on August 1, 1932, as the result of injuries sustained on July 29, 1932, upon being crushed under the wheels of a hay wagon in a runaway.   The only other eyewitness of the accident was Arthur P. Hock.   The insured was carried into his nearby home shortly after the accident, and there made statements to his wife and their son Hollis in relation to the accident.   Hollis wrote to the insurer on July 30, 1932, that on "July 29, 1932, William W. Thayer was thrown from a wagon and suffered several broken ribs which will lay him up for some time;" and on August 1, 1932, he wrote that the insured died that morning as the result of the accident. The insurer sent its forms for proofs of loss to Mabel Thayer, and she, in answers verified on August 3, 1932, stated that her husband was injured upon being thrown forward from a wagon on which he was sitting, and both left

wheels striking and passing over his body; and also stated that Arthur P. Hock was present when the injury was received. Hock, in an answer which he made on one of the insurer's forms and verified on August 3, 1932, stated that the deceased was injured by being "run over by wagon;" and on August 23, 1932, in reply to the insurer's letter to him for further details, he wrote, "Mr. Thayer was thrown off the wagon when the horses started to run and then he was ran over."

In letters written by the insurer it advised Mabel Thayer on September 16, 1932, that provisions in its policy did not cover a case where injuries were received as here; on September 26, 1932, and October 15, 1932, that there was no liability because the injury did not occur on a public highway; and on October 3, 1932, that the policy did not cover because there had to be a wrecking or disablement of the vehicle. On October 13, 1932, the insurer's investigator, R. C. Barnes, called at Mabel Thayer's home, and she and Hollis referred him to Hock. He told Barnes that he and the insured were on a load of hay when the team jumped, and that the insured was run over by the wagon and received injuries which proved fatal. On November 14, 1932, Mabel Thayer retained O'Melia & Kaye as her attorneys, and Hock also stated to them that the insured was thrown from the wagon. In November, 1932, Mabel Thayer commenced her action against the insurer to recover on the policy, and then alleged in her complaint that the insured's death was caused by his being thrown from the wagon and run over. That allegation and all other facts alleged in the complaint were admitted in the insurer's answer. Furthermore, at the request of the insurer's attorney, the parties entered into a written stipulation, which they agreed was to constitute the findings of the court in that action, and in which it was stipulated that the insured died as the result of injuries,

when thrown from the wagon and run over. That action was tried solely upon the facts as stated in that stipulation without taking any testimony, and the insurer relied upon contentions that its policy did not, as a matter of law, cover an injury sustained in the manner and under the conditions stated in the stipulation. The trial court concluded, upon the facts as stipulated, that the insurer was liable under the policy, as a matter of law, and judgment was entered accordingly on March 16, 1933, in favor of Mabel Thayer. The insurer appealed from that judgment on June 13, 1933, but never served a printed case or brief. On its motion that appeal was dismissed in February, 1934, and the record was remanded to the trial court, in which the insurer desired to present a motion for a new trial. That motion was based by the insurer largely upon an affidavit which its attorney obtained from Hock on January 31, 1934, and in which he stated that Hollis and his brother, Winfred Thayer, had importuned him to advise the insurer and to testify, if necessary, to the effect that William W. Thayer was thrown from the wagon, whereas in truth he was on the ground and was not thrown from the wagon. In a counteraffidavit obtained from Hock on February 4, 1934, by one of Mabel Thayer's attorneys, Hock swore to a somewhat different state of facts, and to the effect that he did not know whether the deceased was thrown from the load of hay or not. The trial court denied the motion for a new trial upon the ground that under sec. 269.46, Stats., the insurer could not be relieved of the stipulation into which it entered. On the insurer's appeal that order was affirmed on February 5, 1935, on the ground that the stipulation was contractual in nature and "entitled to all the sanctity of an ordinary contract." *Thayer v. Federal Life Ins. Co.* 217 Wis. 282, 258 N. W. 849. Thereupon the insurer commenced this action to enjoin enforcement of the judgment entered on March 16, 1933, in favor of Mabel Thayer.

On the trial of this action which resulted in the judgment from which the insurer took this appeal, the court found, in connection with other facts:

"That the evidence received on this trial wholly fails to establish to that degree of certainty required by the rule in Wisconsin, that there was any fraud or collusion practiced by the defendant or entered into between her, or her son Hollis, in her behalf or otherwise, with said Hock, and that the affidavits and testimony of said Hock is so equivocal as to be almost totally lacking in probative force and that there is no other evidence in this case sufficient to establish the allegations of the plaintiff here with that certainty, clearness and satisfaction necessary to grant the relief demanded."—

and upon that and the other findings the court concluded:

"That the evidence in this action wholly fails to prove the allegations of the plaintiff's complaint that the judgment obtained by the defendant against the plaintiff was the result of fraud and collusion to such certainty, clearness and satisfaction as to entitle the plaintiff to the relief demanded."— and ordered judgment dismissing the complaint herein.

In relation to actions of this nature, this court said in *Boring v. Ott,* 138 Wis. 260, 273, 119 N. W. 865: "It is established by all the authorities that a very high degree of proof in such cases is required, many cases holding that there must be a conviction for perjury before equity will interfere, while others hold that it must be established beyond reasonable doubt either by admission, documentary evidence, or by such other proof as to leave no reasonable ground for doubt." Likewise, this court held in *Laun v. Kipp,* 155 Wis. 347, 374, 145 N. W. 183, that in such cases plaintiffs are not entitled to relief "unless they can establish with more than mere reasonable certainty the facts upon which they rely,— prove them with that degree denominated 'clear and satisfactory' which should be regarded with considerable emphasis in a case of this sort and up to the very border line, perhaps, of where no reasonable doubt remains." Conse-

quently, the ultimate and controlling question on this appeal is whether, in view of the rule thus declared to be applicable in respect to the very high degree of proof required in cases of this nature, the record herein did not warrant the trial court in making the crucial findings of fact and conclusions of law quoted above.

At the outset it must be noted that there is no evidence whatsoever that either Mabel Thayer or her sons, Hollis or Winfred, intentionally or knowingly made any false or unfounded statement or representation to the insurer. On the other hand, it does appear, without any contradiction or conflict, that commencing with Hollis Thayer's statement in his letter to the insurer on July 30, 1932, that his father was thrown from a wagon and injured, he, as well as Mabel Thayer, consistently stated that to be the fact, and believed it to be true because of information to that effect given to them by the insured when he was brought home shortly after his injury. There is no evidence which would warrant finding that when Hollis Thayer made that statement in that letter of July 30, 1932, it was based on anything said by Hock, or on any information received from any other source than the insured. On the contrary, there is no contradiction of Hollis Thayer's testimony that when he wrote that letter he had talked with his father as to the manner in which he got hurt, and that the information which he had when he wrote that letter he received from his father. Likewise, there is no contradiction of Mabel Thayer's testimony that what the insured told her, about half an hour after he was brought home, as to how he was injured corresponded with the proofs of loss which she furnished. That testimony, as the court rightly ruled, was competent, in this action in which Mabel Thayer and her sons were charged by the insurer with fraud by conspiring to have Hock make a false report, to show the real source and manner of receiving their in-

formation that the insured was injured upon being thrown from a wagon. It was admissible when it was introduced as proof in defense because, in connection with the undisputable fact that Hollis Thayer had reported that information to the insurer prior to the insured's death, it refuted convincingly the insurer's proof, on putting in its case in chief, in support of its contention that the judgment of March 16, 1933, was procured by virtue of a false statement made by Hock, pursuant to a fraudulent conspiracy entered into between Hock and Mabel, Hollis, and Winfred Thayer a few days after the insured's death.

The probative effect and force of the proof upon which the insurer relied depended primarily upon the credibility of statements made by Hock in affidavits and testimony given after September 29, 1933. Thus, in his affidavit dated January 31, 1934, Hock said that, after the insured's death, Hollis Thayer had requested him to say that the deceased had fallen from the wagon before being run over; and on the trial herein Hock testified that a few days after the insured's death Hollis, accompanied by his brother, said, "I got to have a driver on the wagon that dad was run over by in order to collect insurance. He has to be thrown off the wagon and someone else has to be driving;" and he also testified that he discussed the matter with Hollis before writing his letter of August 23, 1932. It is true that those statements in Hock's subsequent affidavit and testimony contradict his former statements to the insurer that the insured was thrown from the wagon, but they do not convincingly establish that those former statements were false or that the insurer was misinformed in that respect because of a scheme conceived after the insured's death.

However, to further discredit Hock's former statements to the insurer and to prove that he had acted in collusion with the Thayers, the insurer relies upon statements pro-

cured by it in September, 1933, from Katherine Janke and her husband, Bud Janke (who were relatives of Hock), in which they charged Hock and the Thayers with misinforming the insurer as to the cause of the insured's death; and also relies upon statements by Hock in letters to Hollis Thayer in September, 1933, and on January 3, 1934, which the insurer claims prove the existence of such collusion and willingness on Hock's part to misrepresent the cause of the insured's injury in order to obtain the indemnity from the insurer. Although it is true that those letters and the Jankes' testimony admit of findings to that effect, it also appears therefrom that, because of animosity toward the Thayers on the part of the Jankes, the latter harassed Hock and threatened to get him into trouble until he was finally coerced to make statements in contradiction of his former statements to the insurer. But even as late as September 29, 1933, and notwithstanding the Jankes' threats, Hock wrote Hollis Thayer :

"Bud said that Mr. Thayer was not on the wagon that is the statement that Dempsey told me and he wanted me to sign some papers and I told him I won't sign nothing and I said that Mr. Thayer was on the wagon but not when he was ran over he couldn't very well be on the wagon and a wheel going over his body at the same time. I am the only one that seen the accident and no one can tell me different for I don't give a dam what Bud says or anyone else."

Hock's answers in testifying on the trial, in relation to what he saw in respect to the position of the insured just before the horses began to run away, are contradictory and confusing evasions, and render it somewhat doubtful as to whether he was able to see the insured at all at that time, because of the hay which was on the wagon and their respective positions, and the work in which each of them was then engaged. With the record in that state, it was for the trial court to determine, in so far as Hock's statements and testi-

mony were involved, which of them was credible and true; and that record well warranted the court's conclusion that "the affidavits and testimony of said Hock is so equivocal as to be almost totally lacking in probative force."

The insurer also contends that the court erred in excluding as hearsay the proposed testimony by Katherine Janke as to conversations which she claims to have had with Hock on and after the date of the accident, and which indicated a change in his former statements to the insurer. The insurer claims that the proposed testimony was competent because Hock's statements were the declarations of a conspirator with the Thayers. If there had been sufficient credible evidence tending to show the probable existence of a conspiracy between them, such testimony as to the declarations of a conspirator would have been admissible. *Boyce v. Independent Cleaners, Inc.,* 206 Wis. 521, 240 N. W. 132. The trial court, however, apparently did not consider the evidence in the record sufficient to establish, *prima facie,* the existence of a conspiracy, and therefore excluded the proposed testimony. The state of the record does not warrant a reversal of that ruling.

*By the Court.*—Judgment affirmed.