STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael E. WHITAKER, Defendant-Appellant.†

Court of Appeals

*Nos. 91-1075-CR, 91-1076-CR. Submitted on briefs January 14, 1992.—Decided February 18, 1992.*

(Also reported in 481 N.W.2d 649.)

†Petition to review denied.

250

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James R. Lucius* of Shorewood.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Jerome S. Schmidt,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J.   Michael Whitaker was convicted in two jury trials of 1) first-degree reckless homicide while armed, in violation of sections 940.02(1) and 939.63(1) & (2), Stats., and 2) possession of cocaine with intent to deliver, in violation of sections 161.16(2)(b)1 and 161.41(1m)(c)1, Stats. He raises five issues on this appeal.

First, he claims that the trial court erred in not admitting into evidence at his request in the homicide trial an exculpatory out-of-court statement given by Tommie Lee Harris that Whitaker contends was against Harris' penal interest and thus admissible under Rule 908.045(4), Stats. Second, Whitaker asserts that the trial court abused its discretion in permitting a police officer to testify in the homicide trial about gang *modus operandi.* Third, Whitaker argues that the trial court erred in receiving into evidence in the homicide trial an out-of-court statement by Tommie Lee Harris offered by the State under the co-conspirator exclusion from the rule against hearsay, Rule 908.01(4)(b)5, Stats. Fourth, Whitaker contends that the trial court erred in permitting several of the persons he wanted to call as defense witnesses in the homicide trial to assert their Fifth Amendment privilege against self-incrimination through their attorneys. Finally, he claims an abuse of sentencing discretion in connection with his conviction on the drug charge. We affirm.

251

## I.

Whitaker was convicted of shooting Tamika Patrick following the breakup of a Saturday-night party at a house on East Hadley Avenue in the City of Milwaukee. The State's main witness, Raquel Russel, testified that she went to the party at around 9 p.m. There were first approximately forty-five to fifty, and later sixty-five to seventy-five persons between the ages of fifteen and nineteen at the party, including Whitaker and Patrick. Many of the young people at the party were street-gang members. Ultimately, rowdiness and violence that began at the party spilled out onto the nearby streets, and shots were fired. Russel told the jury that she saw Whitaker shoot Patrick. Although Russel did not know Whitaker prior to meeting him at the party, she testified that she was able to identify him as the shooter because when he shot Patrick he was still wearing the same clothes he wore at the party, including a black baseball-type cap that said "Sleepy" on the side.

## II.

Most of Whitaker's claims of trial-court error involve decisions to admit or exclude evidence. Such decisions are vested in the reasoned discretion of the trial court and will not be reversed on appeal if they have "a reasonable basis" and were made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983) (citation omitted). We review Whitaker's contentions of evidentiary error against this standard.

**A. Rule 908.045(4), Stats. (statement against interest):** Whitaker's first claim of trial-court error is that the court should have received into evidence an April 27, 1989, written and notarized out-of-court statement by Tommie Lee Harris. Harris' nickname was "Sleepy," and his statement asserted that he and not Whitaker wore the "Sleepy" cap the night Patrick was shot.[1] Harris had, earlier, told the police that Whitaker was wearing the hat that night. Harris asserted his Fifth Amendment right not to testify at the trial, and was thus found by the trial court to be unavailable as a witness. *See* Rule 908.04(1)(a), Stats. (" 'Unavailability as a witness' includes situations in which the declarant . . . [i]s exempted by ruling of the judge on the ground of privilege from testifying concerning the subject matter of the declarant's statement.").[2] Given Russel's identification of the shooter as the person who wore the "Sleepy" hat, Harris' statement that he was wearing the hat was

---

[1]The statement was in Harris' handwriting and reads as follows:

> My name is Tommie Harris I was at the party the night Tamika Patrick got shot. Doin *[sic]* that entire even *[sic]* I wore my hat. The hat was black and had Villanoa Wilcat *[sic]* my name was on the side it sade *[sic]* sleepy. Michael Whitaker never wore my hat. I wore my hat on *[sic]* all night.

Harris also testified at Whitaker's preliminary examination that Whitaker had been wearing his own hat the entire evening. Whitaker's counsel expressly told the trial court, however, that he did not want that testimony admitted into evidence.

[2]The constitutional privilege against self-incrimination takes precedence over a defendant's constitutional right to compulsory process. *State v. McConnohie,* 121 Wis. 2d 57, 71, 358 N.W.2d 256, 263 (1984).

against his penal interest when it was made.[3] Accordingly, the statement falls within the ambit of Rule 908.045(4), Stats., which provides:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . ..
>
> . . . A statement which . . . at the time of its making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborated.

The corroboration required before a statement against the declarant's penal interest may be received into evidence under Rule 908.045(4) to exculpate an accused must be "sufficient to permit a reasonable person to conclude, in light of all the facts and circumstances, that the statement could be true." *State v. Anderson,* 141 Wis. 2d 653, 660, 416 N.W.2d 276, 279 (1987). The trial court applied this legal standard in determining that the April 27 statement was not admissible under Rule 908.045(4), and gave the following explanation:

> This Court will find that as to the written statement [of April 27] of Tommy *[sic]* Lee Harris, and as to his testimony in the preliminary [examination] transcript when contrasted with a statement given to the police earlier before he recognized the significance of the wearing of a hat to lead me to believe that no reasonable person could conclude in all—in light of

[3]Neither the parties nor the trial court considered whether Harris might have waived his Fifth Amendment privilege concerning his conflicting statements as to who was wearing his "Sleepy" baseball cap that evening. We do not address this issue.

all the facts and circumstances that the statement [of April 27] could be true. I am satisfied on the basis of the totality of this record that Tommy *[sic]* Lee Harris is not a person who could be believed in his subsequent statements.

The trial court applied the correct legal principles and based its decision on a reasonable view of the evidence. There was no abuse of discretion in excluding the statement.

**B. Police officer testimony about gang *modus operandi*.** The trial court permitted a police officer to testify that gang members will exchange items of clothing with one another to frustrate identification. Whitaker contends that this was error for three reasons. First, Whitaker claims in his appellate brief that this proposition is not "so far beyond the knowledge, understanding or experience of the ordinary juror so as to require expert testimony." Second, he argues that there was no evidence that Whitaker went to the party with the intention to commit a crime so that frustration of his identification by others would be a motive to exchange items of clothing. Third, he claims that there was no proof that the officer relied on accurate information in formulating his opinions concerning gang activity. We disagree.

First, expert testimony is *required* only if the issue to be decided by the jury is beyond the general knowledge and experience of the average juror. *Kujawski v. Arbor View Health Care Center,* 139 Wis. 2d 455, 463, 407 N.W.2d 249, 252–253 (1987). Expert testimony is *permitted,* however, even though it may not be required, when it will "assist the trier of fact to understand the

evidence." Rule 907.02, Stats.[4] *See also Lievrouw v. Roth,* 157 Wis. 2d 332, 356–357, 459 N.W.2d 850, 859 (Ct. App. 1990). The trial court did not abuse its discretion in concluding that the police officer's testimony could assist the jury in evaluating the evidence. Additionally, the trial court correctly instructed the jurors that it was their responsibility to determine the officer's credibility as a witness and the weight they would give to his testimony.

Second, the State's case was, at least in part, premised on the theory that much of the violence during and after the party was gang-related. Indeed, even Whitaker's trial attorney conceded the admissibility of evidence concerning gang activity when he acknowledged that if the State wished to "elicit testimony about the practices of youth gangs to wear their hats a certain way and tip them, that would be relevant." It was also conceded by both the State and the defense that "Sleepy" was Harris' nickname, not Whitaker's. Yet, Russel testified that Whitaker was wearing the "Sleepy" hat. Accordingly, the alleged practice of gang members exchanging clothing to frustrate identification bolstered her testimony; it was therefore relevant. *See* Rule 904.01, Stats. (" 'Relevant evidence' means evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") (Emphasis added.)

[4]Rule 907.02, Stats., provides:

**Testimony by experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Third, a witness is qualified to give an opinion under Rule 907.02, Stats., when he or she has "specialized knowledge" as the result of "knowledge, skill, experience, training or education." *Ibid.* In formulating his or her opinion, the witness may rely on matters that are not admissible as substantive evidence as long as those matters are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject" of the witness' opinion testimony. Rule 907.03, Stats. The State laid an extensive foundation for the police officer's opinions concerning gang activity and elicited the bases for those opinions. Additionally, Whitaker's trial counsel conducted a lengthy *voir dire* of the officer. During the course of these examinations, the officer testified that at the time of the trial he had been assigned to the Milwaukee Police Department's Metro Gang Crimes Unit since the unit's inception eight years earlier, although at the time of trial he was on special assignment with the department's Violent Crimes Task Force. He explained that he had attended seminars on youth-gang activity, studied the relevant literature about youth-gang activity, received in-service training in that area, worked with police officers considered to be youth-gang experts in other midwest jurisdictions, conducted training sessions in youth-gang activity for law enforcement officers as well as school principals, teachers, and counselors, and had personally interviewed more than fifty purported youth-gang members. The officer's testimony established a sufficient threshold foundation for his opinion testimony on gang activity.

Once a party lays a threshold foundation for a witness to give an opinion under Rule 907.02, Stats., the burden shifts to the adverse party to show that the

257

underlying bases for the witness' opinion are insufficient to support that opinion. *See Karl v. Employers Ins. of Wausau,* 78 Wis. 2d 284, 300, 254 N.W.2d 255, 262 (1977) ("If a party's expert relies on certain data, 'fair play' requires that the opponent may show that the data relied on did not support the conclusions of the testifying expert, or that the data relied on contained information ignored by the testifying expert."). Whitaker adduced no evidence that any of the bases on which the officer relied for his opinions concerning youth-gang activity did not support those opinions. The trial court did not abuse its discretion in receiving the officer's opinion testimony.

**C. Rule 908.01(4)(b)5, Stats. (statement by co-conspirator of a party):** Over Whitaker's objection, the trial court permitted a police officer to testify during the State's rebuttal that Tommie Lee Harris told him that after Whitaker shot Patrick, Harris said to Whitaker "you got one." The trial court received the statement under Rule 908.01(4)(b)5, which provides that an out-of-court declaration "offered against a party" is not hearsay if it is "[a] statement by a coconspirator of a party during the course and in furtherance of the conspiracy."[5] We must first evaluate whether there was suf-

---

[5]Whitaker's trial counsel also objected on double-hearsay grounds; namely, that although what Harris said at the time of the shooting might or might not have been a statement by a coconspirator within the ambit of Rule 908.01(4)(b)5, Stats., Harris' statement to the police officer was also hearsay and was not in the furtherance of any conspiracy. Each hurdle erected by the rule against hearsay must be independently cleared. Rule 908.05, Stats. ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in this

ficient evidence for the trial court to conclude that Whitaker and Harris were part of a conspiracy as that term is used in Rule 908.01(4)(b)5. This analysis turns on whether Harris' statement may be considered as part of this foundation.

In 1981, the Wisconsin Supreme Court held that a statement sought to be admitted under Rule 908.01(4)(b)5, Stats., may not be considered as part of the evidentiary foundation. *State v. Dorcey,* 103 Wis. 2d 152, 158, 307 N.W.2d 612, 615 (1981). As precedent, *Dorcey* followed, without independent analysis, the 1942 United States Supreme Court decision in *Glasser v. United States,* 315 U.S. 60, which predated the adoption of the Federal Rules of Evidence, and its own 1936 decision in *Federal Life Ins. Co. v. Thayer,* 222 Wis. 658, 269 N.W. 547, which did not discuss the issue, *id.,* 222 Wis. at 667, 269 N.W. at 550. *Dorcey,* 103 Wis. 2d at 158, 307 N.W.2d at 615.

*Glasser* held that unless the out-of-court declaration was made in the presence of the defendant, its consideration as part of the evidentiary foundation would improperly permit the statement to "lift itself by its own bootstraps to the level of competent evidence." 315 U.S. at 74-75. In 1987, the United States Supreme Court revisited the *Glasser* rule in light of the Federal Rules of Evidence, enacted by Congress in 1975—specifically, Rule 104(a). *Bourjaily v. United States,* 483 U.S. 171, 176-181 (1987). Rule 104(a) provides:

---

chapter."). We will not consider this hearsay-within-hearsay argument, however, since Whitaker has not raised it in his appellate brief. *Cf. Reiman Assocs. v. R/A Advertising, Inc.,* 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981) (issue not briefed is deemed waived).

> Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . . In making its determination it is not bound by the rules of evidence except those with respect to privileges.

As the Federal Advisory Committee Note explains, under Rule 104(a) "[a]n item, offered and objected to, may itself be considered in ruling on admissibility, though not yet admitted in evidence." *See Bourjaily*, 483 U.S. at 179 n.2.[6] *Bourjaily* determined that Rule 104(a)'s clear language overturned much of *Glasser*, and held that the out-of-court declaration could itself be used in conjunction with other evidence of a conspiracy in deciding whether the declaration should be admitted under Federal Rule 801(d)(2)(E).[7] *Bourjaily*, 483 U.S. at 176–181.

Rule 901.04(1), Stats., is virtually identical to Federal Rule 104(a), and provides:

> Preliminary questions concerning . . . the admissibility of evidence shall be determined by the judge . . . .. In making the determination the judge is bound by the rules of evidence only with respect to privileges.

The Judicial Council Committee Note to Rule 901.04(1) points out that Wisconsin's rule was designed to operate in the same manner as its federal counterpart. Thus, it explains that the significant last sentence of Rule 901.04(1) "deviates from the federal rule only in the interest of clarity; no change of substance is intended." 59 Wis. 2d at R16. This congruence between Federal Rule 104(a) and Rule 901.04(1) is consistent with the

---

[6]The Federal Advisory Committee Note is reprinted at 59 Wis. 2d R16.

[7]Rule 908.01(4)(b)5, Stats., is Wisconsin's counterpart to Federal Rule 801(d)(2)(E).

general approach followed by the drafters of Wisconsin's rules of evidence:

> In formulating the Wisconsin rules, uniformity with the Proposed Federal Rules was the overriding principle. Because evidence law was applied "on the run" in the heat of the combat of the adversary system, it was thought that a Wisconsin trial lawyer should not be required to be skilled in two potentially contradictory systems of evidence. Changes from the federal rules were proposed only in instances where legal tradition or legislative enactment seemed substantially compelling or where Wisconsin law was more advanced. The differences are not substantial enough to stimulate forum shopping nor to complicate the mastery of both codes by the bar.

J. Decker *A New Wisconsin Evidence Code?* 56 Marq. L. Rev. fourth unnumbered page preceding 156 (1973).[8]

As Wisconsin's intermediate appellate court, we are of course bound by Wisconsin Supreme Court precedent. *State v. Lossman,* 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984). Nevertheless, we may deviate from Wisconsin Supreme Court precedent when that precedent is based on an interpretation of federal law that is no longer in accord with subsequent decisions by the United States Supreme Court. *In re Paternity of C.A.S.,* 156 Wis. 2d 446, 454, 456 N.W.2d 899, 902 (Ct. App. 1990), *aff'd,* 161 Wis. 2d 1015, 468 N.W.2d 719 (1991). As noted, *Dorcey* made Wisconsin's hearsay-treatment of co-conspirator statements consistent with federal law by adopting *Glasser*'s anti-bootstrapping precept. Federal

---

[8]Judge John A. Decker was the Reporter for the Wisconsin Judicial Council Evidence Committee, which drafted the rules. *See* 56 Marq. L. Rev. sixth unnumbered page preceding 156.

Rule 104(a) has overturned *Glasser*'s proscription. We conclude that Rule 901.04(1), which was not mentioned in *Dorcey,* vitiates *Dorcey*'s adoption of the *Glasser* rule. We thus reach the decision deferred in *State v. Webster,* 156 Wis. 2d 510, 515–516 & n.3, 458 N.W.2d 373, 375 & n.3 (Ct. App. 1990) and *State v. Blalock,* 150 Wis. 2d 688, 702–704, 442 N.W.2d 514, 519–520 (Ct. App. 1989), and hold that Rule 901.04(1) permits an out-of-court declaration by a party's alleged co-conspirator to be considered by the trial court in determining whether there was a conspiracy.[9]

The requisite "conspiracy" under Rule 908.01(4)(b)5, Stats., is concerted action: "[n]ot all of the elements of the substantive crime of conspiracy need be proven." *Dorcey,* 103 Wis. 2d at 157, 307 N.W.2d at 615. Similarly, neither the party against whom the out-of-court declaration is sought to be admitted into evidence under the rule nor the out-of-court declarant need be charged with conspiracy. *Ibid.* A statement by a co-conspirator is in furtherance of the conspiracy if it reassures and keeps the other participants cohesive in their illegal endeavor, or apprises them of developments. *United States v. Yarbrough,* 852 F.2d 1522, 1535–1536 (9th Cir. 1988), *cert. denied,* 488 U.S. 866; *United States v.*

---

[9]Significantly, Harris' statement could have been considered even under *Glasser,* although arguably not under *Dorcey.* As we recognized in *Blalock,* "*Glasser* excepted from its anti-bootstrapping rule those out-of-court statements made in the presence of the alleged co-conspirator against whom admission of those statements is sought." *Blalock,* 150 Wis. 2d at 702, 442 N.W.2d at 519. *Dorcey* did not comment on *Glasser*'s different treatment of those out-of-court statements made in the defendant's presence and those not made in the defendant's presence.

*Traitz,* 871 F.2d 368, 399 (3rd Cir. 1989), *cert. denied,* 493 U.S. 821.

A police officer testified that Whitaker told him that he and five friends, including Harris, had weapons at the party because they were afraid that a group at which Harris had shot the previous evening would attempt retaliation. Whitaker told the police officer that after he and his friends left the party Saturday night they heard shots. Two of those with Whitaker pointed to a nearby car, and told Whitaker to "shoot down there." The officer related to the jury what happened next:

> [Whitaker] states that he walked down to the side-walk, on the north side of the street, pulled out his three fifty-seven, held it in two hands and he showed me like this and he fired all six shots in the direction of 3rd Street.

It was during this volley that Patrick was shot and that Harris told the police he said to Whitaker: "You got one."

■

A trial court may not admit evidence under the duties imposed by Rule 901.04(1), Stats., unless it is satisfied by a preponderance of the evidence that a sufficient foundation has been laid. *State v. Frambs,* 157 Wis. 2d 700, 705–707, 460 N.W.2d 811, 814 (Ct. App. 1990). Considering Harris' statement "You got one" together with the other evidence in the case, we conclude that the trial court did not abuse its discretion in determining that the statement was made during the course and in furtherance of a conspiracy with Whitaker. First, Whitaker's own statements to the police after the shooting reveal that the young men were engaged in concerted illegal action when Whitaker, at the direction of his friends, started to shoot. Second, Harris' statement,

"You got one," both reassured Whitaker and apprised him of his success in fulfilling the object of their concerted action. "You got one" was thus admissible against Whitaker under Rule 908.01(4)(b)5, Stats.[10]

**D. Invocation of privilege against self-incrimination.** At the trial, Whitaker sought to call several persons as witnesses on his behalf. The trial court permitted their lawyers to assert their Fifth Amendment privilege on their behalf without requiring that they come to court to personally invoke the privilege. Although not challenging the trial court's conclusion that each of the persons had a basis for invoking the privilege, *see State v. McConnohie,* 121 Wis. 2d 57, 69, 358 N.W.2d 256, 263 (1984) (no specific inquiry needed when danger of self-incrimination "apparent to the trial court from the circumstances"), Whitaker contends that the trial court should have individually interrogated each potential witness to verify that each person did in fact wish to assert the privilege. Although we agree with Whitaker that this would have been the preferable procedure, lawyers are presumed to represent the best interests of their clients; absent a threshold showing that, despite what Whitaker admits was a basis for the trial court's conclusion (that testimony by the potential witnesses would have exposed them to self-incrimination), the persons would have nevertheless decided to testify, Whitaker's assertion of error is without merit. *Cf. State v. McDowell,* 247 N.W.2d 499, 500 (Iowa 1976) (counsel for potential witness present in court may assert Fifth

---

[10]A defendant's right to confrontation is not violated by admission of a co-conspirator's statement that passes muster under Rule 908.01(4)(b)5, Stats. *Webster,* 156 Wis. 2d at 517–520, 458 N.W.2d at 376–377. Whitaker does not directly argue to the contrary.

Amendment privilege on behalf of client); *Victoria v. State,* 522 S.W.2d 919, 922 (Tex. Crim. App. 1975) (counsel for potential witness present in court may assert Fifth Amendment privilege on behalf of client).

**E.   Sentence in drug case.** The trial court sentenced Whitaker to an indeterminate term of incarceration not to exceed twenty years on the conviction for first degree reckless homicide, and to a consecutive indeterminate term of incarceration not to exceed two years on the drug conviction. Whitaker asserts that the sentence on the drug conviction must be reversed and remanded since the trial court considered as a factor the homicide conviction, which he contends was improperly obtained. We disagree. First, consideration of the circumstances surrounding the shooting of Patrick would have been entirely appropriate even if Whitaker had been acquitted of the homicide charge. *See Elias v. State,* 93 Wis. 2d 278, 284, 286 N.W.2d 559, 562 (1980). Second, Whitaker was convicted on the homicide charge, and we are affirming that conviction in all respects.

*By the Court.*—Judgment and order affirmed.