COURT OF APPEALS
DECISION
DATED AND FILED

October 29, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2125-CR**

Cir. Ct. No. **2012CF2560**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KEVIN PITTMAN, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed.*

Before Brash, P.J., Kessler and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kevin Pittman, Jr., appeals a judgment convicting him, following a jury trial, of felony murder as a party to a crime and possession of a firearm by a felon. *See* WIS. STAT. §§ 940.03, 939.05, 941.29(2)(a) (2011-12).[1] He also appeals the circuit court's order denying his postconviction motion. Pittman argues that he is entitled to a new trial because trial counsel was ineffective and because he has newly discovered evidence. We reject each argument that Pittman makes on appeal and, accordingly, affirm the judgment and order.

## I. BACKGROUND

¶2 The criminal complaint alleged that police were dispatched in response to an armed robbery/shooting complaint. Upon arriving at the reported location, they observed Russell Setum in the middle of the street covered in blood. Setum's mother told police that an individual with a handgun approached Setum as he got out of his vehicle. Setum went to his knees with his hands in the air. The individual with the handgun ordered him to remove his jacket and shoes while pointing the gun at Setum's head. As this was happening, Setum's mother was at the back door of her home and was yelling, "don't kill my baby!"

¶3 According to the complaint, at this point, Setum was face down on the ground. The individual with the gun asked for the keys to Setum's vehicle. Setum told him they were in the truck. Again, Setum's mother pleaded with the individual not to kill Setum. Setum's mother reported that the individual looked at her and stated, "[s]orry mama" before shooting Setum. Setum's mother told

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

2

police that she began screaming and tried to open the back door to her home, at which point, the individual with the gun started shooting at her. She felt one of the shots hit her foot as she fled.

¶4 Police later found Setum's vehicle in a different location, engulfed in fire and stripped of its tires, rims, and other materials.

¶5 The State initially charged Pittman with conspiracy to commit armed robbery as a party to a crime. That charge was later amended to one count of felony murder as a party to a crime and one count of possession of a firearm by a felon.

¶6 After a five-day trial, the jury convicted Pittman on both counts. Trial testimony revealed that Pittman provided a gun to Robert Cameron so that Cameron could use it to rob Setum. The robbery resulted in Setum's death.

¶7 For the felony murder charge, the circuit court sentenced Pittman to fifteen years of initial confinement and ten years of extended supervision.[2] For being a felon in possession of a firearm, the circuit court imposed a consecutive sentence of five years of initial confinement and five years of extended supervision.

---

[2] There appears to be an error in the judgment of conviction. Despite the circuit court's oral sentencing pronouncement, the written judgment of conviction indicates that Pittman was sentenced on count one to fifteen years of initial confinement and five years of extended supervision. *See State v. Prihoda*, 2000 WI 123, ¶29, 239 Wis. 2d 244, 618 N.W.2d 857 ("In Wisconsin, an unambiguous oral pronouncement of sentence controls over a written judgment of conviction."). We direct the circuit court to correct this scrivener's error in the judgment of conviction upon remittitur. *See id.*, ¶¶26-27.

¶8      Pittman subsequently filed a postconviction motion seeking a new trial on grounds that he had newly discovered evidence.[3]  He also argued that his trial counsel was ineffective and, in the alternative, requested a *Machner* hearing.[4] Following an evidentiary hearing where multiple witnesses testified, the circuit court adopted the State's findings of fact and conclusions of law and denied the motion.  Pittman appeals.

## II. DISCUSSION

### A. *Trial counsel was not ineffective.*

¶9      Pittman continues to argue that he received ineffective assistance from trial counsel.  "Wisconsin applies the two-part test described in *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] for evaluating claims of ineffective assistance of counsel." *State v. Roberson*, 2006 WI 80, ¶28, 292 Wis. 2d 280, 717 N.W.2d 111.   That test requires that a defendant show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687.  "A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one."  *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶10     Our standard of review for ineffective assistance of counsel claims presents "a mixed question of law and fact." *State v. Johnson*, 153 Wis. 2d 121,

---

[3] Pittman additionally raised an issue in his postconviction motion related to the reliability of cell tower evidence, which he has abandoned on appeal.  *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 493, 588 N.W.2d 285 (Ct. App. 1998) ("[W]hen a party fails to argue an issue in its main appeal brief, the appellate court may treat the issue as having been abandoned, even though the issue was presented to the [circuit] court.").

[4] *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

127, 449 N.W.2d 845 (1990). The findings of fact made by the circuit court, "'the underlying findings of what happened,' will not be overturned unless clearly erroneous." *Id.* (citation omitted). However, "[t]he ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently." *Id.* at 128.

¶11 "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness." *State v. Love*, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62. For this assessment, we must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (quoting *Strickland*, 466 U.S. at 689; ellipses in *Carter*). To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶12 "Counsel's decisions in choosing a trial strategy are to be given great deference." *State v. Balliette*, 2011 WI 79, ¶26, 336 Wis. 2d 358, 805 N.W.2d 334. In fact, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690). Even if a decision of counsel is "made with less than a thorough investigation," it "may be sustained if reasonable, given the strong presumption of effective assistance and deference to strategic decisions." *Balliette*, 336 Wis. 2d 358, ¶26.

5

¶13 Pittman argues that trial counsel was ineffective on four bases, which we will address in turn. Because Pittman has not satisfied the deficient performance prong as to any of these assertions, we do not discuss the prejudice prong of the ineffective-assistance analysis. *See Smith*, 268 Wis. 2d 138, ¶15.

### (1) Cynthia Smith

¶14 Pittman first argues that trial counsel was ineffective for failing to call Cynthia Smith as an alibi witness.[5] We resolve this issue on the ground that Pittman fails to show deficient performance because there was a strategic benefit to not calling Cynthia. *See United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005) (recognizing that "[a] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review. The Constitution does not oblige counsel to present each and every witness that is suggested to him" (brackets in *Best*; citation omitted)).

¶15 At the evidentiary hearing, trial counsel, who the circuit court found to be credible, testified that she did not call Cynthia as an alibi witness for a number of reasons. Trial counsel explained that at the time of trial, Cynthia was pregnant with Pittman's child and, consequently, trial counsel had concerns that the jury would not believe her. Additionally, trial counsel had concerns about Cynthia's credibility based on their conversations and her inability to corroborate Cynthia's claim about the existence of exculpatory security camera footage. Lastly, trial counsel was concerned about allegations that Cynthia had attempted to

---

[5] To avoid confusion, we refer to Cynthia Smith as Cynthia and we refer to Nicholas Smith, who is discussed later in this opinion, as Nicholas.

6

influence the testimony of one of the State's witnesses, Laquita Benson.[6] Trial counsel explained that if the jury thought that Cynthia had tried to get Benson to lie for the defense, it would negatively impact the jury's view of Cynthia's testimony.

¶16     Cynthia, who the trial court found was not credible, explained at the evidentiary hearing that she was prepared to testify as an alibi witness. Cynthia said that she was with Pittman the entire night of the crime. Pittman, who the circuit court found was not credible, likewise testified that he was with Cynthia the night of the crime and said that trial counsel told him Cynthia would be called as an alibi witness. Pittman said that he did not agree with trial counsel's subsequent decision not to call Cynthia as an alibi witness at trial.

¶17     Pittman challenges trial counsel's reason for not calling Cynthia to testify due to her alleged interaction with Benson. Pittman asserts that Benson had already testified at the point in the trial when Cynthia would have been called. The issue, however, was not one of timing. Instead, the issue was whether the jury would find Cynthia's testimony credible after hearing that she may have attempted to influence Benson's testimony. Trial counsel's conclusion that strategically it was a bad idea to call Cynthia as a witness for this reason—when considered with the other credibility concerns Cynthia presented—was reasonable.

¶18     Relying on *Tolivar v. Pollard*, 688 F.3d 853 (7th Cir. 2012), Pittman also argues that Cynthia's testimony would have impeached the testimony of Nicholas Smith, who was a key witness for the State. The State submits that

---

[6] Benson testified at trial that she sold a phone with the number 870-3320 to Pittman. Benson also testified that Cynthia had contacted her and told her to deny having done so.

Pittman's reliance on *Tolivar* is misplaced and the holding in that case does not apply to the circumstances presented. Pittman does not refute this in his reply and, therefore, concedes this facet of his argument. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (stating that failure to refute an argument constitutes a concession).

¶19    Pittman failed to show deficient performance on this basis where trial counsel decided that the dangers of calling Cynthia outweighed the possible benefits. This determination fell "within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689.

### (2) Security camera footage

¶20    Next, Pittman argues that trial counsel was ineffective for not calling the apartment manager for Cynthia's apartment building to testify that she viewed a video showing that Pittman's car entered the garage prior to the offense and did not leave until the next day, after the shooting. He further contends that trial counsel was ineffective for not securing the video.

¶21    At the evidentiary hearing, Cynthia testified that the apartment manager told her that the video showed that Pittman's car entered the apartment garage before the crime occurred and left the garage after. Cynthia said that she tried to pick up the tape but was told it would only be provided to an attorney. She told trial counsel to get the tape but testified that trial counsel never did so. Cynthia acknowledged that she had never viewed the video herself.

¶22    Pittman similarly testified that he told trial counsel to get the tape but she never did so.

¶23     The circuit court found that trial counsel "attempted to verify the existence of this video, and was not able to verify that any surveillance video ever existed that supported [Cynthia]'s claims." The circuit court additionally found that trial counsel spoke to the apartment manager who "denied the existence of such corroborating video and further denied having ever viewed the videos." (Bolding omitted.) The circuit court noted that Pittman "has never presented any evidence to support the existence of this video footage, other than [Cynthia]." (Bolding omitted.) The circuit court found that Cynthia, however, had never seen the alleged video and "was not credible during her [evidentiary hearing] testimony." (Bolding omitted.)

¶24     Pittman has not established that the video ever existed. *See State v. Smith*, 207 Wis. 2d 258, 273, 558 N.W.2d 379 (1997) ("The defendant has the burden of proof on both [the deficient performance and the prejudice] components."). Without establishing this, his challenge to trial counsel's representation rests on speculation, which is insufficient to support a claim of deficient performance. *See State v. Leighton*, 2000 WI App 156, ¶38, 237 Wis. 2d 709, 616 N.W.2d 126 (explaining that "[a] defendant must base a challenge to counsel's representation on more than speculation").

### (3) Advising Pittman not to testify

¶25     Pittman also argues that trial counsel was ineffective for advising him not to testify on his own behalf at trial. He claims that trial counsel's reasons for doing so, namely his prior convictions and the lack of corroborating evidence for his alibi, were inadequate. He asserts that Nicholas also had prior convictions. As for the lack of video support, he argues that "most alibi witnesses testify without a video to back them [up]." Pittman further contends that while he was in

jail awaiting trial, individuals tried to sell him the gun that was involved in the crime. He claims that if he had testified about this, it would have rebutted Nicholas's testimony that Pittman brought a gun with him prior to the crime.

¶26 Trial counsel testified at the evidentiary hearing that she did not have Pittman testify because he had six prior convictions and because of his connection to a phone number that related to the crime. That phone number accessed cell towers near the crime, and when he was arrested, Pittman provided the phone number to the police. According to trial counsel, Pittman could not give her an explanation as to why he provided that number, which she believed was strategically problematic in terms of his credibility. Additionally, trial counsel was concerned that if Pittman testified that he was with Cynthia when the crime occurred, the jury would expect her to call Cynthia, which she did not want to do based on the credibility concerns identified above.

¶27 By making this strategic decision, the jury never learned that Pittman had prior convictions, which could have prompted it to conclude that he had a character for untruthfulness and, therefore, was not being truthful in his testimony. Moreover, it was a reasonable strategy for trial counsel to attack the credibility of the State's other evidence instead of presenting evidence that she thought the jury would not find credible. Again, this determination fell "within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689.

**(4) Hearsay**

¶28 The State argued at trial that Pittman and others conspired to assist Cameron in the armed robbery that resulted in Setum's death. Pittman submits that trial counsel was ineffective for not objecting to Nicholas's testimony that Cameron told Pittman to meet them with a gun because they were going to rob

10

Setum. According to Pittman, Nicholas's testimony "was clearly hearsay" to which trial counsel should have objected, and it was not admissible as a statement by a co-conspirator. Pittman contends that this was the only evidence that was presented that he conspired to commit the armed robbery.

¶29    The testimony at issue is the following:

[State]    Okay. So [Pittman] gets into your car, he hands [Cameron] a gun. Did you know why he was walking into your car with a gun at that point?

[Nicholas]    Yes.

[State]    And what was the reason?

[Nicholas]    [Cameron] must have talked to [Pittman] and they talked about it. He wanted to get [Setum] so [Pittman] met us over there on 12th and Walnut, and I followed them to 21st. He hopped in with us with the gun because there wasn't no gun in the car. [Cameron] had the gun at the time.

The State clarified:

[State]    So just so we are clear now. Thomas Cage is out. He is drunk. He is out with his girl. When you stated that you knew the point— When you stated that you testified that you knew the reason why [Pittman] was bringing a gun is because [Cameron] had called him and they wanted to rob [Setum] or basically to commit a robbery of Russell Setum, how did you know that?

[Nicholas]    [Cameron] told me.

¶30    When questioned about the testimony at the evidentiary hearing, trial counsel explained she believed it fell under an exception to the hearsay rule because it was a statement by a co-conspirator.

11

¶31     Pursuant to WIS. STAT. § 908.01(4)(b)5., "[a] statement by a co[-]conspirator of a party during the course and in furtherance of the conspiracy" is not hearsay.  Pittman does not argue that Cameron's statement to Nicholas was not made in furtherance of a conspiracy.  Instead, he argues that Cameron's statement to Nicholas was inadmissible hearsay and cannot be bootstrapped as a statement of a co-conspirator without other evidence of the conspiracy.

¶32     In *State v. Dorcey*, 103 Wis. 2d 152, 157-58, 307 N.W.2d 612 (1981), our supreme court forbade the use of a co-conspirator's hearsay statement unless it has first been independently established that a conspiracy exists, because to hold otherwise would be to allow incompetent hearsay evidence to "lift itself by its own bootstraps to the level of competent evidence."   (Citation omitted.) *Dorcey* relied upon *Glasser v. United States*, 315 U.S. 60 (1942).  However, the United States Supreme Court overturned *Glasser* in *Bourjaily v. United States*, 483 U.S. 171 (1987).  In *State v. Whitaker*, 167 Wis. 2d 247, 481 N.W.2d 649 (Ct. App. 1992), we explained that "[WIS. STAT. § ] 901.04(1) … vitiates *Dorcey*'s adoption of the *Glasser* rule.  We thus … hold that [§] 901.04(1) permits an out-of-court declaration by a party's alleged co-conspirator to be considered by the [circuit] court in determining whether there was a conspiracy."  *Whitaker*, 167 Wis. 2d at 262.

¶33     Given that *Dorcey*'s anti-bootstrapping rule was superseded by statute, it was reasonable for trial counsel to think that Cameron's statement was not hearsay because it was a statement of a co-conspirator in furtherance of the conspiracy.  *See State v. Weber*, 174 Wis. 2d 98, 115, 496 N.W.2d 762 (Ct. App. 1993) (emphasizing "that the test for effective assistance of counsel is not the legal correctness of counsel's judgments, but rather the *reasonableness* of counsel's

judgments under the facts of the particular case *viewed as of the time of counsel's conduct*").

¶34    Moreover, as the State highlights, even if the anti-bootstrapping rule was still in effect, Cameron's out-of-court statement was not the only evidence that Pittman was part of a conspiracy to rob Setum. *See* **Whitaker**, 167 Wis. 2d at 262 ("A statement by a co-conspirator is in furtherance of the conspiracy if it reassures and keeps the other participants cohesive in their illegal endeavor, or apprises them of developments.").[7]  Nicholas testified:  (1) Cameron said to Nicholas that he wanted to "get" Setum, meaning rob Setum of his truck or rims; (2) Pittman got into Nicholas's car and handed a gun to Cameron; (3) Nicholas stopped his car by Setum's truck; (4) Setum got into his truck and drove away; (5) Nicholas's car stopped at a red light, so Pittman called Anthony "Peewee" Perkins, who was also following Setum's truck, to see where the truck had gone; (6) Cameron spoke to someone over the phone and learned where Setum was likely headed; (7) Nicholas dropped off Cameron in that location, and Cameron still had the gun from Pittman; (8) Nicholas drove to a gas station, saw Setum there, and talked to him; (9) Pittman remained in Nicholas's car at the gas station and talked to Perkins and Cameron on the phone; (10) Setum left the gas station; (11) Nicholas and Pittman drove to Setum's house; and (12) Cameron shot Setum outside of Setum's house.

---

[7] Pittman submits that there was no other evidence showing that he knew the gun Nicholas said he provided would be used in an armed robbery.  There was no requirement for corroboration of that specific facet of Cameron's statement.  Rather, "[t]he requisite 'conspiracy' under [WIS. STAT. §] 908.01(4)(b)(5) … is concerted action[.]"  *See* **State v. Whitaker**, 167 Wis. 2d 247, 262, 481 N.W.2d 649 (Ct. App. 1992).

¶35     We are not persuaded by Pittman's contention that this list of events "show no more participation of Pittman than if Nicholas Smith picked up a hitchhiker."   Instead, this evidence connected Pittman to the conspiracy to rob Setum.   It was reasonable for trial counsel to think that Cameron's out-of-court statement was admissible even if the anti-bootstrapping rule had been in effect.[8]

**B.** ***Pittman has not satisfied the requirements for newly discovered evidence.***

¶36     Pittman reiterates his argument that he is entitled to a new trial because of newly discovered evidence—a postconviction affidavit by his former girlfriend, Lakeya Coleman, suggesting that 870-3320 was not Pittman's phone number at the time of the crime.[9]   This phone number accessed cell towers near the crime, and when he was arrested, Pittman told police that it was his phone number.

¶37     "The decision to grant or deny a motion for a new trial based on newly discovered evidence is committed to the circuit court's discretion." ***State v. Avery***, 2013 WI 13, ¶22, 345 Wis. 2d 407, 826 N.W.2d 60.   "A circuit court erroneously exercises its discretion when it applies an incorrect legal standard to newly[]discovered evidence." ***State v. Plude***, 2008 WI 58, ¶31, 310 Wis. 2d 28, 750 N.W.2d 42.

---

[8] To the extent that Pittman also challenges Nicholas's testimony on the basis that it was a conclusion and a response to a leading question, his argument is undeveloped.  As a result, we will not consider it further. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

[9] Lakeya Coleman is identified as Lakeya Coleman-Hamilton at various points in the record.  For purposes of this decision, we refer to her as Lakeya Coleman.

¶38 In order to warrant a new trial, newly discovered evidence must meet the following requirements: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *Avery*, 345 Wis. 2d 407, ¶25 (citations and one set of quotation marks omitted). If the defendant establishes the first four requirements, then a court determines, as a fifth requirement, "whether a reasonable probability exists that a different result would be reached in a trial." *Id.* (citation omitted). This determination is a question of law. *Plude*, 310 Wis. 2d 28, ¶33.

¶39 At Pittman's trial, Benson testified that she sold Pittman a phone that had the phone number 870-3320. Pittman submits that this was an important fact at trial because the State produced records showing that that phone number called Cameron's phone and the phone was tracked to the crime scene.

¶40 At the evidentiary hearing, Coleman, who the trial court found was not credible, testified that she was dating Pittman on the date of the crime and when he called her, Pittman did not have the phone number 870-3320. Although she initially denied it, during cross-examination, Coleman admitted that Benson told her she gave Pittman a phone. The circuit court concluded that "the testimony of Ms. Coleman is not 'newly discovered evidence' as it was known to the defendant prior to both his trial and his conviction."

¶41 Pittman relies on the fact that the affidavit post-dates his trial and asserts that the knowledge that Coleman could provide exculpatory testimony about the phone number came to him after the trial. On appeal, the State assumes for the sake of argument that Pittman has satisfied the third and fourth

requirements of the newly discovered evidence test. Therefore, only the first, second, and fifth requirements are at issue.

¶42    We focus our attention on the fifth requirement. *See **State v. Eckert***, 203 Wis. 2d 497, 516, 553 N.W.2d 539 (Ct. App. 1996) (holding that a newly discovered evidence claim fails unless it meets all of the requirements). The circuit court found that Coleman "did not appear credible and testified contrary to an earlier sworn affidavit filed in this case." The circuit court additionally described Coleman's testimony as confusing. In light of these findings, there is no reasonable probability of a different outcome on retrial. *See **State v. Carnemolla***, 229 Wis. 2d 648, 661, 600 N.W.2d 236 (Ct. App. 1999) (explaining that the circuit court decides the credibility of the witnesses, and a finding of a reasonable probability of a different outcome on retrial cannot be supported by testimony the circuit court finds incredible). Accordingly, we affirm Pittman's judgment of conviction and the denial of his postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.